STATE OF INDIANA *v.* PETER CHERIS ET UX.

[No. 472A204. Filed October 11, 1972. Rehearing denied November 27, 1972. Transfer denied May 7, 1973.]

*Theodore L. Sendak,* Attorney General, *John T. Carmody,* Deputy Attorney General, for appellant.

*Chris J. Pappas,* of Gary, *Gordon A. Etzler, Chester, Clifford, Hoeppner & Houran,* of Valparaiso, for appellees.

SHARP, J.—This case was initiated in the Porter Circuit Court on August 15, 1969, by the State of Indiana which sought to condemn a portion of a parcel of land owned by Peter and Pota Cheris, husband and wife, (hereinafter landowners).

The trial court, on September 30, 1969, entered its order condemning the land and appointed appraisers who returned a report assessing damages in the amount of $30,000. Both parties filed exceptions to the report and the case was set for trial. After several continuances the trial was finally held and was concluded on May 4, 1971, on which date the jury

returned a verdict for the landowners in the amount of $32,500.00, with interest computed by the trial court. The trial court entered judgment in accordance with the verdict and the State duly filed its Motion to Correct Errors, which was overruled.

The record indicates that the highway department of the State of Indiana instituted a project in Porter County to improve the intersection of U.S. 20 and State Road 249, more commonly known as Crisman Road. The landowners owned a piece of property on the east side of Crisman Road, the northernmost boundary of which was 282 feet south of U.S. 20 and which had 264 feet of frontage on Crisman Road and a depth of 330 feet from the center of the highway to the back of the property. The north 18 feet of the property was zoned commercial and the remaining portion zoned residential.

The total acreage owned by the landowners was 1.879 acres, of which the State condemned .219 acres, leaving a residue of 1.66 acres. The land taken consisted of a tapered strip along the entire 264 foot frontage, the southern 2/3 being 30 feet in width and the northern third being 40 feet in width. Although the strip taken does not include within it any portion of any building, it does come within eight inches of a house. In addition to the land taken, the plans called for the construction of a depressed grass median strip 18 inches deep and 28 feet in width at its widest point, along the center of Crisman Road from the intersection to a point 34 feet north of the southern edge of the property. It is the effect of the median strip that forms the basis of this appeal.

The State submits that the trial court committed error in permitting into evidence an Exhibit N, which showed the alleged circuity of travel necessitated by the proposed median strip, by permitting witnesses to base their evidence of damages to the residence on the effect of the median on the future use of the property, and by refusing to instruct the jury that

damages resulting from construction of the median strip were not compensable.

The basic issue is whether the construction of the median strip resulted only in an impairment of the previously free and unrestricted flow of traffic passing the premises, or whether the proposed median strip resulted in a material and substantial interference with the landowners' right of access.

The award of damages to the landowners was based on the theory that their right of access had been substantially impaired due to the construction of the median in that in order to reach the property from U.S. 20, instead of traveling the 300 feet directly to the site, one must now travel a circuitous route of one and one-half miles. This circuity of travel allegedly had the effect of reducing the highest and best use of the residue from commercial and business to a low value residential. Appellees' admit that it was with this factor in mind that their appraisers placed an after-value on the site of $7600.00, $10,630.00 and $9155.00. Thus, by the Appellees own admission the highest and best use of the residue was reduced not by the actual taking of a portion of the property but because of the construction of the median strip which impaired the ability of southbound traffic on Crisman Road from making a left-hand turn directly onto Appellees' property.

The State places primary reliance for reversal on *State* v. *Ensley, et al.* (1960), 240 Ind. 472, 164 N. E. 2d 342, which also involved the construction of a median strip accompanied by the taking of some land to widen the highway. The Supreme Court recognized the rule that an abutting property owner has an easement of ingress and egress in a public highway which cannot be substantially or materially interfered with or taken away without just compensation. However, the Supreme Court further noted that the impairment of access was not caused by the con-

demnation of a part of the landowners' property but rather by the construction of a divider strip which resulted in a diversion of traffic from the premises. It was held that such did not constitute a taking of property within the meaning of the law of Eminent Domain. Finally, at pages 489 and 490 of 240 Ind., the Supreme Court gave its rationale as follows:

"What appellees are actually contending here is that they have a property right in the free and unrestricted flow of traffic passing their premises and any impairment of, or interference with, this alleged right must be compensated. They here are attempting to equate this alleged 'right' with the property right of ingress and egress. The general rule is that there is no property right of an abutting property owner in the free flow of traffic past his property and thus no compensation can be claimed if traffic is diverted from his premises or made to travel a more circuitous route. Warren v. Iowa State Highway Commission (1958), 250 Iowa 473, 93 N. W. 2d 60, 65; Walker v. State (1956), 48 Wash. 587, 295 P. 2d 328, 331; In re Appropriation of Easements for Highway and Slope Purposes (1955), 101 Ohio App. 1, 137 N. E. 2d 595, 598; Jones Beach Boulevard Estate, Inc. v. Moses, et al. (1935), 268 N. Y. 362, 197 N. E. 313, 315, 100 A. L. R. 487.

No private property of appellees has been taken from them as a result of the construction of the divider strip. It is true that such strip affects the access to their property by preventing the free flow of northbound traffic directly into it from Keystone Avenue. Some of this traffic may even be diverted from their premises and all northbound traffic on Keystone Avenue is compelled to follow a more circuitous route in order to reach Little America. Even though such inconvenience to the public may result in some damage to appellees' business, such damage is not compensable because they have no property right in the free flow of traffic past their place of business.

\* \* \*

Since appellees have no property right in the free flow of traffic past their premises, the construction of the divider strip does not deprive them of any property right, and, hence, any damage sustained thereby, by loss of business or depreciation in the value of their property, would not, for this further reason, be compensable under paragraph Fourth of § 3-1706, supra.

This court takes judicial notice of the ever-increasing problems of traffic control with which a thriving metropolitan area is confronted. The creation of such facilities as limited access highways, one-way streets, express thoroughfares and other methods of construction such as that involved in the present case, is to be encouraged in the interest of traffic control and regulation to the end that the general welfare and safety of the public may best be served.

Since the verdict of the jury included compensation for the alleged partial impairment of appellees' right of access resulting from the construction of the divider strip and since this was not a proper element of damages, the verdict was contrary to law."

Although the landowners made a concerted attempt to distinguish *Ensley, supra,* we find it directly applicable to the case at bar. The landowners contend that *Ensley* does not stand for the proposition that partial impairment of the right of access because of a median strip is not a proper element of damages, but rather that the degree of circuity of travel required by the median strip is a factor in determining whether the remaining direct access is reasonable. The above quoted language of *Ensley* is clearly counter to the landowners' argument and furthermore, the cases cited in *Ensley* from other jurisdictions involved distances equal to and greater than the distances involved in this case. *Iowa State Highway Commission* v. *Smith* (1957), 248 Iowa 869, 82 N. W. 2d 755, concerns a situation where the property owner had to travel approximately one mile in order to reach another piece of property owned by him abutting on the opposite side of the highway. In *Jones Beach Boulevard Estate* v. *Moses* (1935), 268 N. Y. 362, 197 N. E. 313, the same type of situation was present and the abutting property owner had to travel five miles before he could turn around and proceed in the opposite direction.

Also, in *Ensley* the median strip extended along the entire length of the property while the strip involved here stops at a point 34 feet north of the southern edge of the property.

Finally, the cases cited by the landowners in an attempt to circumvent *Ensley* are readily distinguishable in that all involve the establishment of limited access highways which completely closed the existing direct access to said highways and restricted the landowners' access to a secondary road. This distinction was recognized in *State* v. *Geiger and Peters, Inc.* (1964), 245 Ind. 143, 196 N. E. 2d 740, where our Supreme Court stated that *Ensley* did not involve a denial or cutting off of access to the highway affecting abutting property owners.

As pointed out in *Ensley*, more jurisdictions that have considered the question have held that an abutting property owner has no vested interest in the flow of traffic past the premises and that any damages sustained to the residue as a result of a diversion of traffic caused by a median strip or other traffic control device which does not totally limit direct access to the highway are not compensable. For more recent cases concerning this question, see *Jacobson* v. *State, State Highway Commission* (1968), Maine, 244 A. 2d 419; *Painter* v. *State, Dept. of Roads* (1964), 177 Neb. 905, 131 N. W. 2d 587; *Hayutin* v. *Colorado State Dept. of Highways* (1971), 175 Colo. 83, 485 P. 2d 896. For an exhaustive annotation of this question, see also 73 A. L. R. 2d 694 § 4.

Since the award in this case is based in part upon the depreciation to the residue due to the construction of a median strip with the resulting loss of traffic flow and since such diversion of traffic is a non-compensable element, the verdict is contrary to law. *State* v. *Ensley, supra.*

This case is hereby reversed and ordered remanded for a new trial.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported in 287 N. E. 2d 777.