## REGINA RECKE, INDIVIDUALLY AND d.b.a. PRAIRIE MOTEL, v. STATE AND OTHERS.

215 N. W. 2d 786.

March 15, 1974—No. 44107.

*Wurst, Bundlie, Carroll & Crouch* and *Donald R. Bundlie,* for appellant.

*Warren Spannaus,* Attorney General, *Eric B. Schultz,* Deputy Attorney General, and *John C. Jeppesen,* Special Assistant Attorney General, for respondents.

Heard before Knutson, C. J., and Kelly, MacLaughlin, and Mulally, JJ., and considered and decided by the court.

MacLAUGHLIN, JUSTICE.

Plaintiff, Regina Recke, d.b.a. Prairie Motel, petitioned for a writ of mandamus compelling defendant, State of Minnesota, to commence condemnation proceedings to compensate her for diminution in the value of her motel caused by defendant's relocation and reconstruction of State Highways No. 169 and No. 212. The trial court denied the petition on the ground that the

damages sustained by plaintiff are not constitutionally compensable. We affirm.

Plaintiff is the owner of the Prairie Motel, which for several years has been located within the Eden Prairie village limits on Highways 169 and 212, both of which ran along the same right-of-way at the point where the motel is located. In 1971, the state began a relocation and reconstruction program for Highways 169 and 212, converting them into a controlled- or limited-access freeway. Prior to the relocation and reconstruction, plaintiff's motel abutted and had complete access to the highway, which was a two-lane roadway. The new right-of-way of Highways 169 and 212 has been relocated to the north and west of plaintiff's property and, at its nearest point, is 445 feet from the subject property and approximately 785 feet from the right-of-way of the old highway at the site of the motel. No land was acquired from plaintiff for construction of the new highway.

After the relocation and reconstruction, plaintiff's property continues to abut the old highway, now called Flying Cloud Drive. There has been no interference with or change whatsoever in the access that plaintiff's property had to the old highway prior to the relocation. Approximately 3,000 feet to the southwest of plaintiff's property, Flying Cloud Drive will provide access to the newly constructed Highways 169 and 212 via County State Aid Highway (C.S.A.H.) No. 61 and a full-diamond interchange. By crossing over the newly relocated highways on C.S.A.H. No. 61, it is possible to continue along the previous route of old Highways 169 and 212. To the east of plaintiff's property, Flying Cloud Drive intersects Washington Drive, an Eden Prairie village street, which in turn intersects other local and county roads.

Because of the relocation of the highway, traffic on the new highway is rerouted away from plaintiff's motel, and there has been an appreciable decline in the market value of the property. The issue is whether this decline in the market value is constitutionally compensable under the facts in this case.

Minn. Const. art. 1, § 13, provides:

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

Under Minn. St. 160.08, landowners abutting a controlled-access highway may be allowed either limited access or no access whatsoever, but subd. 5 provides:

"* * * In the case of any elimination of existing access, air, view, light, or other compensable property rights, the owner shall be compensated for the loss by purchase or condemnation."

In State, by Lord, v. Kohler, 268 Minn. 77, 81, 128 N. W. 2d 90, 93 (1964), we stated:

"* * * [W]here in the construction of a controlled-access highway an owner of abutting property is denied reasonably convenient and suitable access to the main traveled portion of a highway reconstructed on an existing right-of-way which previously was entirely accessible to such property, compensable damage may be sustained notwithstanding the availability of a frontage road from which the property has circuitous access to the main thoroughfare at interchanges."

Later cases have followed this rule, holding that a property owner is entitled to reasonably convenient and suitable access in at least one direction to the main-traveled lanes of the highway on which his property abuts. State, by Mondale, v. Gannons Inc. 275 Minn. 14, 145 N. W. 2d 321 (1966); State, by Mattson, v. Prow's Motel, Inc. 285 Minn. 1, 171 N. W. 2d 83 (1969); Gibson v. Commissioner of Highways, 287 Minn. 495, 178 N. W. 2d 727 (1970).

On the other hand, as we said in Hendrickson v. State, 267 Minn. 436, 442, 127 N. W. 2d 165, 170 (1964):

"* * * The weight of authority, with which we agree, holds that a property owner has no vested interest in the continued flow of the main stream of through traffic, and the state may

divert it to a new location without being liable **for consequential** economic losses which owners abutting on the old highway may sustain."

Plaintiff relies heavily on Hendrickson to support her claim for damages. In Hendrickson, the plaintiff claimed damages for diminution in value to a motel located on a highway which was converted to a controlled-access thoroughfare. The controlled-access highway and adjacent service road were constructed for the most part out of the previously existing right-of-way of the old highway plus an additional 22-foot strip of land acquired on the side of the right-of-way opposite the motel. The motel was thus deprived of free and immediate access to the highway on which it was located. In Hendrickson, we elected to follow those jurisdictions which hold that where an existing highway is converted to a controlled-access thoroughfare, abutting owners have lost a valuable right which is not necessarily restored by furnishing a frontage or service road. Following the rule that a property owner is entitled to reasonable access in at least one direction to the abutting highway, we remanded the case for a determination by the trial court of the proposed location of the nearest permanent interchange which would allow access from the service road to the main thoroughfare in at least one direction. We then held that if the jury decided that the location of the proposed interchange substantially impaired plaintiff's right to reasonably convenient and suitable access to the main highway he was entitled to whatever damages may have been caused by the impairment.

We think Hendrickson is clearly distinguishable from this case. The controlled-access highway and service road in the Hendrickson case were constructed for the most part from the right-of-way of the then existing highway, and the abutting landowner was denied direct access. Here, the newly constructed highway uses none of the existing right-of-way, but is located on an entirely new right-of-way which is some distance from plaintiff's property and which does not abut that property. Plain-

tiff has exactly the same access to the old highway as she did prior to the relocation of Highways 169 and 212.

In Hendrickson, we concurred with other courts which "acknowledge the state's right to regulate traffic without liability for the resulting damage, and have no quarrel with the principle that compensation need not be paid for the relocation of a highway diverting the main flow of traffic." 267 Minn. 444, 127 N. W. 2d 172.

In our judgment, this case falls within the principle that compensation need not be paid for damages caused by the relocation of a highway which results in a diversion of the main flow of traffic. There is no vested right to the flow of traffic under these circumstances.[1] Therefore, we affirm the trial court's determination that any diminution in the value of plaintiff's property caused by the reconstruction and relocation of Highways 169 and 212 is not constitutionally compensable.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[1] In State, by Mattson, v. Colon, 292 Minn. 189, 194 N. W. 2d 574 (1972), we held that benefits derived from being located on a highway intersection are general and not special and, as such, may not be offset against damage accruing through the exercise of eminent domain. We stated (292 Minn. 198, 194 N. W. 2d 579): "Another reason for not permitting the setoff for gains in value due to the expected traffic increase is that the condemnee acquires no vested right in that traffic. The gain could be lost to him by rerouting the interstate highway, but such a diversion of traffic would not create a right to compensation."