**COUNTY OF ANOKA, Respondent,**

v.

**BLAINE BUILDING CORPORATION, et al., petitioners, Appellants.**

**Nos. C5–95–1584, C7–95–1585.**

Supreme Court of Minnesota.

July 17, 1997.

Fredrickson & Byron, P.A., David Meyer, Minneapolis, Leonard, Street & Deinard, James R. Dorsey, Bradley J. Gunn, Minneapolis, for Petroleum Marketers Assn.

Hubert H. Humphrey III, Atty. Gen., Donald J. Mueting, Cassandra O. O'Hern, Asst. Attys. Gen., St. Paul, for State.

Carla J. Heyl, St. Paul, for League of Minnesota Cities.

## OPINION

GARDEBRING, Justice.

This case raises the question of what measure of damages is appropriate when a portion of property is taken for the reconstruction of a roadway that coincidentally includes the addition of a median foreclosing access to the remaining property from one side of the roadway. Appellants are property owners who had portions of their land taken, under the power of eminent domain, for the roadway reconstruction project. Appellants sought to have the partial loss of traffic access caused by the new median considered in the determination of damages for the partial taking. The trial court and the court of appeals both held that partial loss of traffic access is not a compensable loss, and accordingly, evidence of that loss may not be introduced into the determination of severance damages. We affirm on the same basis.

In early 1991 the Anoka County Commissioners approved a plan to reconstruct County State–Aid Highway Number 51, otherwise known as University Avenue, between 97th Avenue and 106th Avenue, Northwest. The significant aspect of the construction project, for purposes of this appeal, was the widening of the road and the installation of a median strip that prevents left turns into and out of properties along University Avenue.

Appellants are owners of four parcels of land, parcels 18, 19, 20 and 21, on the east side of University Avenue, between 101st Avenue and 102nd Lane. Parcel 18 contains a bank, the western portion of parcel 21 is improved with a gas station and convenience store, and parcels 19 and 20 are unimproved vacant lots. To accomplish the reconstruction of University Avenue, the county acquired a 27–foot strip of land from parcels 18, 19 and 20, and an 18.7–foot strip from parcel 21. The new median on University Avenue was constructed entirely on the existing right-of-way, and not on any of the land taken from appellants. While the new median prevents left turns to and from the southbound lanes, access to and from the northbound lanes is unchanged.

Pursuant to the procedures set forth in Minn.Stat. ch. 117, the county petitioned for and obtained an order granting the transfer of title to the affected strips of land in mid–1993. At the same time, the trial court appointed commissioners to determine the damages due to each land owner, as provided in Minn.Stat. § 117.075. The commissioners' recommendation for parcels 18 through 21 included severance damages that were based, in part, on the loss of traffic access to and from the southbound lanes of University Avenue.

In two separate actions—one concerning parcels 18 and 19, and the other concerning parcels 20 and 21—both the county and the landowners appealed to the district court. The county sought partial summary judgment in both matters, arguing that, as a matter of law, the property owners were not entitled to introduce evidence of the partial loss of traffic access into the damages assessment. The trial courts granted partial summary judgment on that basis and the landowners appealed. In a consolidated appeal, the court of appeals affirmed the grant of partial summary judgment as to both landowners. *County of Anoka v. Maego, Inc.,* 541 N.W.2d 375 (Minn.App.1996).

On appeal from summary judgment, we consider two questions: first, whether there are any genuine issues of material fact, and second, whether the lower courts erred in their application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990) (citing *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988)).

Because there are no factual disputes, this case requires us to determine only whether the lower courts erred in their application of the law.

It is well settled that the state must compensate a landowner when land is taken for a public purpose. The Minnesota Constitution provides: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Minn. Const. art. 1, § 13. A taking "include[s] every interference, under the right of eminent domain, with the possession, enjoyment, or value of private property." Minn.Stat. § 117.025, subd. 2 (1996).

When there has been only a partial taking of land, the damages are known as "severance damages" and are measured by the "before and after" rule: the difference in market value of the land before the taking and the market value of the remaining land after the taking. *Minneapolis–St. Paul Sanitary Dist. v. Fitzpatrick*, 201 Minn. 442, 457, 277 N.W. 394, 402 (1937); *State by Humphrey v. Strom*, 493 N.W.2d 554, 558–59 (Minn.1992). To determine the fair market value, "any competent evidence may be considered if it legitimately bears upon the market value." *Strom*, 493 N.W.2d at 559 (citations omitted); *see also Minneapolis–St. Paul Sanitary Dist.*, 201 Minn. at 449, 277 N.W. at 399. The damages, however, must arise from changes in the land actually taken, and not merely from the impact of the construction project as a whole. *City of Crookston v. Erickson*, 244 Minn. 321, 325, 69 N.W.2d 909, 912–13 (1955); *Strom*, 493 N.W.2d at 560.

Interference with access to an abutting roadway may be a compensable taking. While property owners have no vested interest in the continued flow of traffic past the property, *Hendrickson v. State*, 267 Minn. 436, 442, 127 N.W.2d 165, 170 (1964), property owners do have a right of "reasonably convenient and suitable access" to a public street or highway that abuts their property. This right is in the nature of a property right. *Johnson v. City of Plymouth*, 263 N.W.2d 603, 605 (Minn.1978). *See also State by Mondale v. Gannons, Inc.*, 275 Minn. 14, 19, 145 N.W.2d 321, 326 (1966);

*Hendrickson*, 267 Minn. at 445–46, 127 N.W.2d at 172–73. Thus, a property owner suffers compensable damage when the roadway is changed in such a way that the owner is denied reasonably convenient and suitable access to the main thoroughfare *in at least one direction*. *Gannons*, 275 Minn. at 19, 145 N.W.2d at 326 (citing *Hendrickson*, 267 Minn. at 436, 127 N.W.2d at 167) (emphasis added). *See also Recke v. State*, 298 Minn. 500, 502, 215 N.W.2d 786, 788 (1974). "[T]he law is well settled * * * that the dividing of a roadway by median strips or dividers cannot be made the subject of compensation in condemnation," where, as a result, a property owner loses traffic access in one direction, but retains access in the other. *Gannons*, 275 Minn. at 23, 145 N.W.2d at 329.

Here, appellants suffered a partial taking of their properties for a public purpose, the reconstruction of University Avenue. Thus, there is no question that they are entitled to severance damages for that taking. The question presented is what factors may be considered in determining those damages. In particular, we must determine whether the loss of traffic access to and from one direction, caused by the construction of the median, may be included when determining the market value of their remaining land after the partial taking.

Appellants recognize that they do not have a right to be compensated for the loss of traffic access to and from the southbound lanes of University Avenue, if that were the only damage to the value of their properties. Nevertheless, they argue that they should be allowed to include that partial loss of access in the determination of severance damages, because access to traffic is a factor that influences the market value of the remaining property. Further, they note that, in general, "evidence of any matter with [sic] would influence a prospective purchaser and seller in fixing the price" may be included when assessing severance damages. *City of St. Paul v. Rein Recreation, Inc.*, 298 N.W.2d 46, 50 (Minn.1980). Because any prospective purchaser would consider the absence of traffic access in purchasing these properties, ap-

pellants argue, traffic access should be considered here.

We are not persuaded that the policy of evidentiary inclusiveness in market value determinations should overcome the longstanding rule that loss of traffic access from the construction of a median is not a compensable taking. Allowing appellants to introduce traffic access into the determination of market value would allow them to do indirectly what they cannot do directly: be compensated for the loss of traffic access from one side of the roadway when they retain access to the other side.[1]

■ Appellants face an additional barrier to recovering for the median construction: the loss of access did not result from changes in the property taken from appellants, but from a change on the existing right of way. Generally, an owner is not entitled to damages caused to remaining land by the use of an adjoining piece of property acquired from other landowners, even though all the properties are used for the same project. *City of Crookston v. Erickson,* 244 Minn. 321, 325, 69 N.W.2d 909, 913 (1955).

■ Appellants urge us to apply an exception to this general rule that we enunciated in *City of Crookston.*[2] There, we held that when part of an owner's land is taken and the part taken "constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put," the owner is entitled to recover the full damage resulting from the project, including that part of the project built on adjoining lands. 244 Minn. at 327, 69 N.W.2d at 914. Thus, in *City of Crookston,* we allowed an owner

whose taken property jutted into a corner of the parcel used to build a sewage treatment facility to obtain severance damages which included the effect of the treatment facility. *Id.* at 327–28, 69 N.W.2d at 914. At the same time, we did not allow another owner whose land was taken for the construction of a pipeline that delivered sewage to the treatment facility to be compensated for the effects of the treatment facility. *Id.*

We have never applied the *City of Crookston* doctrine to any facts other than those presented in that case itself, and we decline to do so here. In *City of Crookston,* we were concerned that the damages were practically impossible to apportion between the part of the project built on the land taken from the owner and the project as a whole. 244 Minn. at 326, 69 N.W.2d at 913. Other states that have adopted the "integral and inseparable" rule have done so out of concern that apportioning damages in certain fact situations is impossible. *See, e.g., Andrews v. Cox,* 129 Conn. 475, 481, 29 A.2d 587, 590 (1942); *Haggard v. Indep. School Dist. of Algona,* 113 Iowa 486, 494, 85 N.W. 777, 780 (1901); *City of Albuquerque v. Westland Development Co., Inc.,* 121 N.M. 144, 148–49, 909 P.2d 25, 32–34 (Ct.App.1995). We do not believe the apportionment of damages here is difficult, and therefore the *City of Crookston* exception does not apply. Indeed the type of damage sought to be included here is very different than the remainder of the "before and after" consideration, and actually, therefore, quite easy to "apportion." While the question of whether the use of the part taken constitutes an integral and inseparable part is usually a question of fact, *City of Crook-*

1. The dissent argues that our result would be different if we relied more heavily on *State by Humphrey v. Strom,* 493 N.W.2d 554 (Minn. 1992). There, we held that evidence of construction-related interferences are admissible as a factor affecting market value, even though such interferences are temporary and of the kind affecting all properties abutting major road construction projects. 493 N.W.2d at 560–61. We further held that evidence of loss of visibility to the public travelling on a redesigned highway, to the extent the loss results from changes in the property taken from the owner, may also be admitted as a factor affecting market value. *Id.* at 561–63. We do not believe *Strom* militates the result the dissent urges. As to the market effects of the loss of access, we have, in *Gannons* and

*Hendrickson* specifically ruled that it is not a compensable loss; there is no parallel ruling as to the loss experienced in *Strom,* loss of visibility. Thus, *Strom* simply does not help in the effort to reconcile the general policy of evidentiary inclusiveness in market value determinations and the longstanding rule of *Gannons* and *Hendrickson.*

2. This issue is raised for the first time in this appeal. It is well settled that a party may not generally raise issues for the first time on appeal. *Matter of Welfare of K.T.,* 327 N.W.2d 13, 16–17 (Minn.1982). We will consider this issue here, however, to give sufficient guidance to the courts below in resolving similar issues.

*ston,* 244 Minn. at 327–28, 69 N.W.2d at 914, this case is so clearly not within that exception that we decline to apply it as a matter of law.

Moreover, deciding this case in appellants' favor would yield future inequitable results. Clearly, if a land owner did not have any land physically appropriated but lost street access in one direction, the owner would not be entitled to damages for the loss of access. *Gannons,* 275 Minn. at 23, 145 N.W.2d at 329. Yet the owner's neighbor, who suffered the same loss of access but did have a strip of land taken, would be entitled to damages. Nothing in the law of takings in Minnesota supports such a result.

 At its heart, appellants' argument seems to be that the loss of access in one direction is somehow different in quality merely because it occurs coincidentally with an unrelated partial taking and that this difference is constitutional in its dimension. However, that implicit argument ignores the fact that the constitutional basis requiring compensation for a direct taking is identical to that requiring payment for damage to property without an actual physical appropriation. Minnesota Const. art. 1, sec. 13 requires compensation for interference with both "possession" and "value" of private property.[3] Moreover, requiring compensation in both circumstances serves the same purpose: to bar the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. *Compare Wegner v. Milwaukee Mut. Ins. Co.,* 479 N.W.2d 38, 40 (Minn.1991) (purpose of compensation for damages) with *Minneapolis–St. Paul Sanitary Dist. v. Fitzpatrick,* 201 Minn. 442, 449, 277 N.W. 394, 398 (1937) (purpose of compensation for physical appropriation). Thus, the loss of access in this case, where there was a contemporaneous partial taking, is not different in a constitutional sense from those cases where we have held that loss of traffic access is not compensable "damage" to an owner's property.

Therefore, we hold that the loss of traffic access may not be the basis of severance damages where a property owner is subject to a partial taking and coincidentally loses access due to the construction of a median barrier.[4]

Our holding is also dispositive of appellants' argument that excluding evidence of traffic access contradicts the Rules of Evidence and statutory eminent domain procedures insofar as those provisions have a policy of the broad admissibility of evidence that is helpful to the determination of market value. *State by Humphrey v. Strom,* 493 N.W.2d 554, 559 (Minn.1992). Our decision is a substantive determination of what kinds of losses may be the subject of compensation in a condemnation proceeding for the partial taking of land. Because we hold that loss of

---

**3.** *See Hendrickson,* 267 Minn. at 439, 127 N.W.2d at 169; *see also Johnson v. City of Plymouth,* 263 N.W.2d 603, 605–606 (Minn.1978). However, not every conceivable kind of injury to the value of private property resulting from road construction is "damage" in the constitutional sense. *Thomsen v. State by Head,* 284 Minn. 468, 472, 170 N.W.2d 575, 579 (1969). The damage must be direct, substantial, and peculiar to the owner, and it must differ markedly from the damage suffered by the public at large. *Id.* at 473, 170 N.W.2d at 579. Because changes in the layout or structure of a road rarely inflict unique damages on one abutting property owner, we have generally excluded most inconveniences arising from road improvements as subjects of compensation. *See Thomsen,* 284 Minn. at 474, 170 N.W.2d at 580; *Hendrickson,* 267 Minn. at 441, 127 N.W.2d at 170; *see also* 4A Phillip Nichols, *Nichols' The Law of Eminent Domain* § 14.12 (Julius L. Sackman ed., 3d ed.1989). There is no allegation here that the loss of traffic access caused by the new median in University Avenue

is unique to these landowners, and the partial taking does not change that fact.

**4.** Our conclusion is consistent with that of the majority of other states that have faced this same question. *County of Winnebago v. Rico Corp.,* 11 Ill.App.3d, 882, 883–84, 296 N.E.2d 867, 869–70 (1973) (surveying other states); *Richley v. Jones,* 38 Ohio St.2d 64, 67–68, 310 N.E.2d 236, 238–40 (1974) (also surveying other states). *See also, Division of Administration, State Dept. of Transp. v. Capital Plaza, Inc.,* 397 So.2d 682, 683 (Fla. 1981); *State ex rel. Moore v. Bastian,* 97 Idaho 444, 447–49, 546 P.2d 399, 402–04 (1976); *State v. Cheris,* 153 Ind.App. 451, 457, 287 N.E.2d 777, 780 (1972); *Hales v. City of Kansas City,* 248 Kan. 181, 184–85, 804 P.2d 347, 349–50 (1991); *W.E.W. Truck Lines, Inc. v. State, Dept. of Roads,* 178 Neb. 218, 222, 132 N.W.2d 782, 785–86 (1965); *State Highway Commissioner v. Howard,* 213 Va. 731, 732, 195 S.E.2d 880, 881 (1973).

traffic access in one direction may not be taken into account in determining severance damages, such evidence is simply not relevant, and therefore not admissible. *See* Minn. R. Evid. 401, 402.

Affirmed.

BLATZ, J., took no part in the consideration or decision of this case.

ANDERSON, Justice (dissenting).

I respectfully dissent from the majority's conclusion that, when there is a partial taking in an eminent domain proceeding, evidence of diminished access due to the construction of a road median is not admissible in determining the before and after fair market value of a landowner's property. I believe the majority's conclusion is incorrect for three reasons: (1) the majority's reading of *State v. Strom,* 493 N.W.2d 554 (Minn.1992), is unduly narrow; (2) case law dictating that evidence of the loss of access in one direction is not compensable in an inverse condemnation context does not necessarily dictate the same result in a partial takings context; and (3) this court's decision in *City of Crookston v. Erickson,* 244 Minn. 321, 69 N.W.2d 909, 915 (1955), supports submitting evidence of the loss of traffic to the finder of fact to determine whether the partial taking of the landowner's property was an "integral and inseparable" part of the street improvement project.

The state's ability to compel owners to relinquish property to the state for public purposes is a powerful intrusion upon the right to the quiet and peaceful ownership of property. The majority correctly recites well-settled law that the state must compensate a landowner whose land is taken for a public purpose. Both the United States Constitution and the Minnesota Constitution expressly limit the state's exercise of the eminent domain power by requiring the payment of just compensation. *See* U.S. Const. amend. V; Minn. Const. art. I, § 13. These constitutional safeguards are rooted in the idea that no single individual should be forced to bear the entire burden for the good of all.

To insure that owners subject to the eminent domain power are made whole when their property is taken, legal safeguards have been established to ascertain the proper measure of damages. When there has been a partial taking of real property, the condemnation award breaks down into (1) damages for the part taken, and (2) severance damages to the part remaining. *Strom,* 493 N.W.2d at 562 (Simonett, J., dissenting in part and concurring in part). Severance damages

> can occur because: (a) the part remaining is a smaller, less usable tract; and (b) the part remaining is adversely affected because of the way in which the land taken from the owner and *others* is put to use by the taker. This second type of revenue damages is also called "consequential" damages.

*Id.* (emphasis added). Severance damages are measured by the "before and after" rule: the difference in fair market value of the property before the taking and the fair market value of the remaining property after the taking. *Minneapolis–St. Paul Sanitary Dist. v. Fitzpatrick,* 201 Minn. 442, 457, 277 N.W. 394, 402 (1937).

In *Strom,* we discussed at length a process to be followed in determining the appropriate measure of severance damages. We first affirmed the overarching principle that "[a]ny competent evidence may be considered if it legitimately bears upon the market value" of the property. *Strom,* 493 N.W.2d at 559 (quoting *Ramsey County v. Miller,* 316 N.W.2d 917, 919 (Minn.1982) quoting *State by Lord v. Malecker,* 265 Minn. 1, 5, 120 N.W.2d 36, 38 (1963) (alteration in original)). We went on to explain:

> To determine the value of property taken in an eminent domain proceeding, the general rule is that " 'subject to the caveat that such proof must be competent, relevant and material, evidence of any matter with [sic] would influence a prospective purchaser and seller in fixing the price at which a sale of the property could be consummated may be considered.' "

In other words, evidence will be admitted concerning any factor which would affect the price a purchaser willing but not

required to buy the property would pay an owner willing but not required to sell it, taking into consideration the highest and best use to which the property can be put. To not admit such evidence causes factors ordinarily considered when negotiating a price for a particular piece of property to be excluded and would result in the determination of a fair market value *not of the property at issue,* but of some nonexistent *hypothetical* piece of property.

*Id.* (citations omitted) (emphasis added).

I would adhere to our holding in *Strom* that "any competent evidence may be considered if it legitimately bears upon market value." *Id.* Consequently, I disagree with the majority's conclusion that *Strom, Crookston,* and our prior inverse condemnation rulings limit the introduction of evidence of diminished access as a factor relevant to the determination of the before and after fair market value of property when there has been a partial taking.

1. The majority's reading of *Strom* is unduly narrow.

In *Strom,* this court held that evidence of construction-related interferences and loss of visibility to property following a partial taking was admissible not as a separate element of damages, but rather as evidence of the diminution in market value of the remainder. *Id.* at 560–62. In an attempt to harmonize its decision with *Strom,* the majority asserts that *Strom* is distinguishable because the damages "must arise from changes in the land actually taken, and not merely from the impact of the construction project as a whole." However, *Strom* only supports this conclusion as it relates to the loss of visibility evidence.

The majority presumably relied on the following passage from *Strom*—concluding that the construction-related damages in that case were not general damages—in asserting that the *Strom* court tied the evidence admitted to physical changes in the property:

[I]n cases where there is a partial taking, the injured owner is not required to show that the injury is peculiar to his remaining property. It is sufficient that the damage is shown to *have been caused by the taking of part of his property* even though it is damage of a type suffered by the public as a whole.

*Id.* at 560 (emphasis added).

Although this passage undoubtedly ties the admissibility of the evidence to the partial taking, it is less clear that the court limited admissibility to evidence of damages arising from the state's use of the condemned property. This passage must be read in harmony with the text of the opinion as a whole. First, although the court explicitly stated in *Strom* that evidence of loss of *visibility* is admissible only when "the diminished visibility results from changes on the property taken from the landowner," *id.* at 561, the court did not expressly place such a limitation on evidence of construction-related damages. Moreover, other passages in *Strom* appear to conflict with such a limitation, including the court's statement that "[t]he construction-related problems visited upon the Woodbridge property are typical of the problems being experienced by other commercial properties located along the length of the reconstruction." *Id.* at 557.

When we summarized our answer to the first certified question in *Strom,* we did not limit our holding to instances in which the damages arose from the state's use of the condemned portion of the plaintiff's property:

We answer the first certified question in the affirmative: In a partial-taking condemnation action, evidence of construction-related interferences is admissible, not as a separate item of damages, but as a factor to be considered by the finder of fact in determining the diminution in market value of the remaining property.

*Strom,* 493 N.W.2d at 560–61. This distinction is made clear when we compare this answer to the answer to the second certified question:

In a partial-taking condemnation action, to the extent that loss of visibility to the public traveling on a redesigned highway *results from changes in the property taken from the owner,* evidence of the loss is admissible, not as a separate item of damages, but as a factor to be considered by the finder of fact in determining the dimi-

nution in market value of the remaining property.

*Id.* at 561–62 (emphasis added).

Notably, *Strom* cites with approval the decision of the Missouri Supreme Court in *State ex rel. State Highway Comm'n v. Nickerson,* 578 S.W.2d 916, 918 (Mo.1979). In *Nickerson,* the Missouri Supreme Court reversed and remanded when the lower court had refused to admit, under the state's "before and after" rule, evidence of the impact of the loss of traffic on the market value of property due to the relocation of a highway. *Id.* at 919. The Missouri court held that by limiting the evidence in this manner, the lower court had asked the jury to "value a hypothetical 2.11 acre tract" and not the actual remaining property. *Id.* at 918. Nowhere did the *Nickerson* court tie the admissibility of the evidence of loss of access to the state's *use* of the condemned portion of the landowner's property. Consequently, I conclude that *Strom* stands for a broader proposition than that evidence of severance damages is never admissible unless the damages arise directly from the state's use of the condemned portion of a landowner's property.

### 2. Inverse condemnation cases are not controlling in a partial takings context.

The majority erroneously relies on this court's prior rulings that a landowner generally has no vested right to two-way access to traffic on an abutting street. *See, e.g., State by Mondale v. Gannons, Inc.,* 275 Minn. 14, 19, 145 N.W.2d 321, 326 (1966) (holding that property owner has vested right to access to street in one direction); *Hendrickson v. State,* 267 Minn. 436, 441, 127 N.W.2d 165, 170 (1964) (stating that property owners have no vested right to continued flow of traffic past property). These cases were treated as inverse condemnation cases by the court and are not dispositive in a partial takings case.

Unfortunately, the majority's misplaced reliance on inverse condemnation precedent confuses the threshold issue of *whether* a property owner is entitled to compensation with the true issue in this case: whether evidence of diminished access is admissible to establish the proper *measure* of damages

when there has been a partial taking. The Texas Court of Appeals recently criticized the state's indiscriminate combination of these distinctly different elements of a condemnation action, noting that such an approach

> mixes indiscriminately the rules which govern two distinctly different elements of a condemnation action: (1) the substantive rules applicable to a determination of *whether* the owner has a legal right to compensation; and (2) the substantive and evidentiary rules applicable to a *calculation* of the owner's compensation once he has established a legal right to it.

*State v. Schmidt,* 805 S.W.2d 25, 29 (Tex.Ct. App.1991) (emphasis added), *rev'd on other grounds,* 867 S.W.2d 769 (Tex.1993). In other words, as appellant landowners argue in this case, the inverse condemnation cases are not helpful in that they address only the issue of whether a compensable taking has occurred and shed little light on the proper measure of damages when, as here, the right to some compensation is indisputable.

There is a distinct and crucial difference in the admissibility of evidence of damages when governmental liability is not at issue—as in this case—as opposed to the admissibility of evidence when liability is at issue. Cynthia M. Filipovich, *Inadmissibility of Governmental Highest Possible Use Evidence in a Partial Takings Case: A Departure From Constitutional Just Compensation,* 70 U. Det. Mercy L.Rev. 873, 879 (1993). Under the general rule articulated in *Strom,* once government liability has been established, "[a]ny competent evidence [of the diminution in fair market value] may be considered if it legitimately bears upon the market value." *Strom,* 493 N.W.2d at 559 (citation omitted). In my view, that this court has previously held that the loss of traffic in one direction does not give rise to governmental liability in inverse condemnation is insufficient justification to disregard the directive of *Strom* when governmental liability is conceded, as in this partial takings case.

Other jurisdictions have held that evidence of damages that are not compensable in an inverse condemnation context may be admit-

ted to establish the post-condemnation value of remaining property following a partial taking under the "before and after" rule. *See, e.g., State v. Moore,* 382 So.2d 543, 545 (Ala. 1980) (holding that jury should be informed of loss of traffic to fast food restaurant not as separate element of damages but as inquiry into market value); *State ex rel. Morrison v. Thelberg,* 87 Ariz. 318, 325, 350 P.2d 988, 992 (1960) (holding that measure of damages for partial taking includes the difference in value before and after access limitations); *Nickerson,* 578 S.W.2d at 918 (admitting evidence of loss of traffic as bearing upon market value). This approach is in accord with this court's determination in *Strom* that evidence of construction-related damage, though not admissible on inverse condemnation, is admissible in a partial taking as bearing upon the question of market value following condemnation. Moreover, this approach furthers the "clear intent" of Minnesota condemnation law to "fully compensate its citizens for losses related to property rights incurred because of state actions." *Strom,* 493 N.W.2d at 558.

3. *City of Crookston v. Erickson* supports admissibility.

In *Crookston,* this court recognized an exception to the general rule that a property owner may only be compensated for damages incurred by the state's use of the owner's condemned property:

> [W]here a part of an owner's land is taken for a public improvement such as [a sewage treatment plant], and the part taken "constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put," the owner is entitled to recover the *full damage* to his remaining property due to such public improvement even though portions of the public improvement are located on land taken from surrounding owners.

244 Minn. at 327, 69 N.W.2d at 914 (quoting *Andrews v. Cox,* 129 Conn. 475, 482, 29 A.2d 587, 590 (1942)) (emphasis added). In so holding, the *Crookston* court allowed the land owner to offer evidence of the full diminution in value of his property after a partial taking even though no part of the sewage plant developed by the city was actually located on

his remaining property. Id. at 327–28, 69 N.W.2d at 911, 914.

The appellant landowners argue that under the rule of *Crookston,* they are "entitled to recover their full damages to their remaining property caused by the University Avenue project even though portions of that project were located upon lands other than those strips actually taken from these owners." They argue that because *all* of the components of the University Avenue projects were integral and inseparable to the entire project, *Crookston* precludes summary judgment in this case.

At least one court has applied the same rationale as this court applied in *Crookston* in allowing evidence of severance damages in a street improvement project condemnation. The California Court of Appeals allowed evidence of severance damages in *People By and Through Dept. of Public Works v. Volunteers of America,* accepting the plaintiff's argument that the freeway "must be considered as a whole * * * as one integral part" of a single project, including the portion which was on the land of the plaintiffs. 21 Cal.App.3d 111, 115, 98 Cal.Rptr. 423, 426 (1971).

The majority characterizes the appellant landowners' loss of access due to the median installation as occurring "coincidentally" with an "unrelated partial taking." I disagree. The record supports that the installation of the median restricting the flow of traffic to appellants' property was part of an integrated attempt to ease congestion on University Avenue: the project necessarily—not coincidentally—required the widening of the street and condemnation of the appellants' property. For these reasons, I believe the appellants should be allowed to introduce evidence at trial of the effect of the loss of access on the before and after market value of their property.

The majority also concludes that allowing the appellants this opportunity would produce future inequitable results in that a landowner equally affected by the loss of access, but who faces no contemporaneous loss of property, would not be entitled to compensation under our inverse condemnation precedent. I am mindful of this apparent inequi-

ty, but am guided by the words of Justice Simonett in *Strom,* who concluded that there is an important difference justifying the admissibility of evidence of a broader array of damages when the state physically takes property. Justice Simonett wrote:

> If there has been a partial taking, that is important. The significance of a partial taking is that it may establish, in a way that a non-taking cannot, the kind of close proximity between the remainder tract and the operation of the public improvement which is necessary to establish that any injury is indeed, direct, substantial and peculiar.

*Strom,* 493 N.W.2d at 563 (Simonett, J., dissenting in part, concurring in part).

I agree and would allow the appellants to offer evidence of the diminution of market value in this case.[1] When the state marshals its awesome condemnation powers to take property from its citizens, more than mere property may be lost: successful businesses may become unprofitable; previously desirable parcels of property may be rendered difficult to sell; even cherished family traditions may be lost when residential property is affected. It is only just, then, to level the playing field by allowing affected citizens to introduce "[a]ny competent evidence" that "bears upon the market value" of the property. *Id.* at 559 (citations omitted).

KEITH, Chief Justice (dissenting).

I join in the dissent of Justice Anderson.

---

1. That the appellants are entitled only to the diminution in market value of the subject property and not to lost profits due to the lost traffic may be emphasized by the district court in a limiting instruction to the jury. *See Riddle v. State Highway Comm'n,* 184 Kan. 603, 613, 339 P.2d 301, 310 (1959).