*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0001**

Robert W. Weckman, et al., petitioners,
Appellants,

vs.

County of Scott,
Respondent.

**Filed July 14, 2014
Affirmed
Stauber, Judge**

Scott County District Court
File No. 70CV1224632

Timothy J. Keane, Malkerson, Gunn, Martin L.L.P., Minneapolis, Minnesota (for appellants)

Patrick J. Ciliberto, Scott County Attorney, Susan K. McNellis, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Stauber, Judge; and

Klaphake, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

In this condemnation dispute, appellant-property owners argue that the district

court erred by excluding evidence of (1) limited ingress and egress to the property due to

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

the construction of a median for the purpose of determining severance damages; (2) construction-related interference with access to the property for the purpose of determining severance damages; (3) costs associated with the construction of a berm to cure construction-related interferences; and (4) appellants' claimed rental value of the land during the course of the temporary construction easement for the purpose of determining damages. We affirm.

## FACTS

The facts of this case are undisputed. Appellants Robert and Cathy Weckman own an agricultural parcel of land (the "property") located at the southwest corner of the intersection of County State Aid Highway (CSAH) 83 and Valley View Road in Shakopee. In November 2009, respondent Scott County initiated a condemnation proceeding in relation to a project to improve CSAH 83 (the "project"). The improvements included expanding CSAH 83 from a two-lane highway to a four-lane divided highway, as well as adding bituminous trails to both sides of the highway.

As part of the project, respondent acquired the following property interests from appellants: (1) a permanent highway easement of approximately 0.06 acres in the northeast corner of the property; (2) two permanent drainage and utility easements of approximately 0.07 acres combined; and (3) a temporary construction easement of 2.87 acres covering a strip of land running the entire length of the property, parallel to the existing right-of-way along CSAH 83. The temporary construction easement was anticipated to last for approximately 20 months while construction crews occupied the

2

area. And as part of the project, a median was constructed in the center of CSAH 83, which restricts northbound ingress to and egress from the property.

In January 2010, three commissioners of appraisal were appointed and ordered to file an award report with respect to respondent's taking of appellants' property interests. After a lengthy appraisal period, the commissioners filed their report and awarded appellants $42,000 for the taking. Appellants subsequently appealed the commissioner's award to the district court in accordance with Minn. Stat. § 117.145 (2012).

In anticipation of the matter proceeding to a jury trial, respondent filed a motion in limine seeking to exclude evidence of diminution of the property's value due to (1) change in access; (2) increased traffic; (3) the addition of the bituminous path; (4) increased noise; (5) diminished privacy; and (6) the cost to cure. Respondent also sought to exclude evidence related to appellants' proposed method for calculating the rental value for respondent's temporary construction easement. The district court granted respondent's motion in its entirety. The parties then reached an agreement regarding damages. But under the terms of the agreement, appellants reserved the right to appeal the district court's evidentiary rulings, leading to this appeal.

## DECISION

Whether to admit or exclude evidence is a matter within the broad discretion of the district court and the court's rulings will not be reversed on appeal absent a clear abuse of that discretion. *Bergh & Misson Farms, Inc. v. Great Lakes Transmission Co.*, 565 N.W.2d 23, 26 (Minn. 1997). A district court abuses its discretion when it bases its

conclusions on an erroneous interpretation of the applicable law. *Fannie Mae v. Heather Apartments Ltd. P'ship*, 811 N.W.2d 596, 599 (Minn. 2012).

Both the United States and Minnesota Constitutions require that just compensation be paid when private property is taken for public use. U.S. Const. amend. V; Minn. Const. art. I, § 13. The Minnesota Constitution provides broader protection for landowners than the federal constitution, and "the clear intent of Minnesota law is to fully compensate its citizens for losses related to property rights incurred because of state actions." *State by Humphrey v. Strom*, 493 N.W.2d 554, 558 (Minn. 1992).

When only part of a landowner's property is taken, the landowner is entitled to compensation for "severance damages," defined as the diminution in value of the land remaining. *Id.* at 558-59. In such cases, severance damages are measured by the "before and after" rule: "the difference in market value of the land before the taking and the market value of the remaining land after the taking." *County of Anoka v. Blaine Bldg. Corp.*, 566 N.W.2d 331, 334 (Minn. 1997) (citation omitted). In assessing the fair-market value, "any competent evidence may be considered if it legitimately bears upon the market value." *Strom*, 493 N.W.2d at 559 (quotation omitted). But the damages "must arise from changes in the land actually taken, and not merely from the impact of the construction project as a whole." *Blaine Bldg. Corp.*, 566 N.W.2d at 334.

Here, appellants challenge the district court's decision to exclude evidence of: (1) limited ingress and egress to the property due to the construction of a median for the purpose of determining severance damages; (2) construction-related interference with access to the property for the purpose of determining severance damages; (3) costs

4

associated with berm construction to cure construction-related interferences; and (4) appellants' claimed rental value of the land during the course of the temporary construction easement for the purpose of determining damages.

## I.  Evidence of limited ingress and egress

To be constitutionally compensable, a taking or damage of private property need not occur in a strictly physical sense and can arise out of any interference by the state with the ownership, possession, enjoyment, or value of private property. *Johnson v. City of Plymouth*, 263 N.W.2d 603, 605 (Minn. 1978).  Property rights include "a right of reasonably convenient and suitable access to a public street or highway which abuts their property." *Id.* (quotation omitted).  "Like other property rights, the right of reasonable access can be infringed or 'taken' by the state, giving the property owner a constitutional right to compensation." *Id.* at 606.

However, it is well settled "'that the dividing of a roadway by median strips or dividers cannot be made the subject of compensation in condemnation,' where, as a result, a property owner loses traffic access in one direction, but retains access in the other." *Blaine Bldg. Corp.*, 566 N.W.2d at 334 (quoting *State by Mondale v. Gannons, Inc.*, 275 Minn. 14, 23, 145 N.W.2d 321, 329 (1966)).  The supreme court has explained the rationale behind this rule as follows:  (1) "the construction of highway medians constitutes an exercise of police power in furtherance of the state's duty to ensure public safety on the roadways"; (2) "the restrictions on travel that result from the use of highway medians affect all members of the traveling public and are not unique to abutting property owners"; (3) a property owner with access to an abutting highway in at least one direction

5

still retains access to that highway in an opposite direction, albeit through an alternative route; and (4) courts are "wary of creating a legal environment in which the cost of regulating traffic and improving roadways becomes prohibitive." *Dale Props., LLC v. State*, 638 N.W.2d 763, 766-67 (Minn. 2002).

Here, citing the rule reiterated in *Blaine Bldg. Corp.*, the district court concluded that "all evidence of limited ingress to and egress from the Property to CSAH 83 is non-compensable and, thus, inadmissible in determining market value of the Property after the taking." Appellants concede that "they do not have a right to be compensated for the loss of traffic access due to median construction to and from the northbound lanes of CSAH 83." But appellants contend that the district court's ruling on this issue is "erroneous" because "[i]n partial taking cases, such as this, the property owner cannot be denied compensation on the grounds that the access changes or interferences are so-called 'general damages.'" Appellants argue that, instead, "Minnesota law specifically provides, in partial taking cases, that any damage an owner sustains by reason of 'inconvenience' caused by the 'taking' may be considered as an element affecting the market value of the remaining property." Appellants argue that because the increased speed, traffic volumes, and traffic-safety issues on CSAH 83 in the "after" condition resulted in considerable inconvenience to appellants, their visitors, and the development potential for a future purchaser of the property, these inconveniences are factors that should be considered when determining the amount that appellants' should be compensated for the taking.

6

We disagree. As the district court found, it is undisputed that appellants "have suffered a partial taking" and, therefore are "clearly entitled to damages" for that partial taking. But the supreme court has repeatedly upheld the long-standing rule that, as a matter of law, the installation or closure of a median does not constitute a compensable taking where the property owner maintains direct access in one direction. *Dale Props.*, 638 N.W.2d at 767; *Blaine Bldg. Corp.*, 566 N.W.2d at 335; *Gannons*, 275 Minn. at 23, 145 N.W.2d at 329; *Hendrickson v. State*, 267 Minn. 436, 440-41, 127 N.W.2d 165, 169-70 (1964). Although appellants may be entitled to further compensation if they can prove that, as a result of the project, the "increased speed, traffic volumes and traffic safety issues on CSAH 83" caused appellants to sustain damages, evidence of limited ingress and egress to the property as a result of the project is not admissible to determine these damages. In fact, the admission of evidence for non-compensable damages would likely confuse and mislead the jury by giving rise to an inference that those claims are compensable. *See County of Anoka v. Maego, Inc.*, 541 N.W.2d 375, 378-79 (Minn. App. 1996) (evidence of diminished accessibility to property likely to confuse and mislead jury in action for taking inadmissible to demonstrate fair market value), *aff'd sub nom. Blaine Bldg. Corp.*, 566 N.W.2d 331. Accordingly, the district court did not abuse its discretion by granting respondent's motion to exclude evidence of the limited ingress and egress to appellants' property due to the construction of a median.

II.     **Evidence of construction-related interference**

Appellants also challenge the district court's ruling that "[e]vidence of construction-related interference due to changes made to the existing right-of-way may

7

not be taken into account when determining severance damages." In addressing the question of what evidence is relevant and admissible in an eminent-domain proceeding, the supreme court has stated that "evidence will be admitted concerning any factor which would affect the price a purchaser willing but not required to buy the property would pay an owner willing but not required to sell it." *Strom*, 493 N.W.2d at 559.

In *Strom*, our supreme court held that evidence of construction-related interferences and loss of visibility caused by changes on the property itself was admissible, not as a separate item of damages, but as a factor to be considered by the factfinder in determining the diminution in market value of the remaining property. *Id.* at 556. In that case, property was taken from the landowner for a four-year temporary construction easement. *Id.* at 557. Evidence of construction-related interferences such as vibration, noise, and dust directly associated with that taking was admissible to show reduction in fair-market value. *Id.* at 560. In addition, property was taken to raise the frontage road 21 feet. *Id.* at 558. Because this frontage road obstructed the traveling public's view of the property from the new highway, loss of visibility evidence was held to be admissible because the obstruction was caused by changes on the landowner's property. *Id.* at 561.

Here, respondent argued to the district court that evidence of construction-related interferences is admissible to show diminution in market value after the taking "only when the construction activity arises from changes to the land taken from the owner." The district court agreed with respondent, recognizing the holding in *Strom*, but concluding that "*Strom* must be interpreted in a much more limited fashion."

8

Specifically, the district court found that the "*Strom* court limited its holding to deem admissible evidence of construction-related interference caused by construction on property that is *actually taken* from a landowner." The district court then distinguished *Strom* from two 19th Century Minnesota Supreme Court cases which held that where the landowner did not suffer a physical taking of his property because the city already owned a public easement where the road that was being improved was located, the landowner was not entitled to damages due to the consequential injury to the property's value. *See Willis v. City of Winona*, 59 Minn. 27, 32, 60 N.W. 814, 815 (1894); *see also Henderson v. City of Minneapolis*, 32 Minn. 319, 323-24, 20 N.W. 322, 324 (1884). Although the district court recognized that *Willis* and *Henderson* are both over a century old, the court noted that the rule was more recently reaffirmed by the supreme court in *Blaine Bldg. Corp.*, which held that landowners are entitled to severance damages in partial takings cases, but such damages "must arise from the changes in the land actually taken, and not merely from the impact from the construction project as a whole." 566 N.W.2d at 334. Thus, the district court held that because respondent's "improvements to CSAH 83 in this case were contained, not on the land taken from [appellants], but instead within the pre-existing right-of-way, . . . [appellants] are not entitled to present evidence of construction-related interferences."

Appellants argue that the district court misconstrued the holding in *Strom* because the court in that case "did not limit its holding regarding construction related interferences to any changes to or work done on the property that was taken." Appellants contend that instead, the supreme court in *Strom* held that "in a partial taking

9

condemnation case, evidence of construction related interferences is admissible as a factor to be considered in determining the market value of the remaining property." Appellants further argue that the district court's reliance on *Blaine Bldg.* is misplaced because the decision in that case "involved an entirely different issue" that "had nothing to do with construction related interferences," and did not "purport to limit the decision in *Strom* in any way." Thus, appellants argue that the exclusion of evidence of construction-related interference due to changes made to the existing right-of-way in this case was erroneous.

We disagree. It is abundantly clear that *Strom* involved property that was actually taken from the landowner. *See Strom*, 493 N.W.2d at 557. And in reaching its conclusion, the supreme court in *Strom* relied on cases in which property was actually taken from the landowner. *See id.* at 560. For example, in *Strom*, the supreme court cited *Underwood v. Town Bd. of Empire*, 217 Minn. 385, 389, 14 N.W.2d 459, 462 (1944), which stated that "[i]t is well settled that, *where part of the owner's land is taken, resulting inconvenience* affecting the use and enjoyment of the remainder is proper for consideration as affecting the market value of the land after the taking." *See id.* (Emphasis added.) The supreme court's reliance on *Underwood* supports the position that in order to be admissible, evidence of construction-related interference must arise from land actually taken from the landowner. In fact, the *Strom* decision gives no indication that the rule it adopted would apply to situations when the construction activity arises from changes to land not taken from landowner.

10

Moreover, as the district court recognized, longstanding Minnesota caselaw indicates that where a landowner did not suffer a physical taking of his property because the city already owned a public easement where a new road was being installed, the landowner should not be awarded damages due to the consequential injury to his property's value. *See Henderson*, 32 Minn. at 322-23, 20 N.W. at 323-24; *see also Willis*, 59 Minn. at 34-35, 60 N.W. at 816 (stating that "construction and maintenance of this bridge approach did not impose any additional servitude upon the street, but was a proper use, hence constitutes no basis for an action in favor of [landowner] for damages"). Specifically, the supreme court in *Henderson* held:

> Upon the acquisition by the public, from the original owner of the soil, of the right to use the land for the purposes of a street, whether that right is acquired by purchase, as by condemnation proceedings, or by gift or estoppel, as by dedication and acceptance, the right of the public to such use of the land as may be consistent with those purposes becomes as absolute as is the right of any owner of land to the use of it for his own purposes. Thenceforth it is the right of the public, subject to any statutory restrictions which may be imposed, to have the land prepared and kept in fit condition for use as a street; to have it improved and changed from time to time, as the public need, and the changing circumstances attending its use, shall require. That changes might be required must be presumed to have been contemplated when the land was taken and devoted to the purposes of a street, as incident to the enjoyment of the easement which was then acquired. The individual proprietor holds his property subject to the public right. He necessarily takes upon himself the risk of the possible consequences of such changes in the grade of the street as may become necessary for the public convenience and safety. Raising the grade of the street, as was done in this case, and with the consequences alleged, is not a taking of plaintiff's property for which, under the constitution, compensation must be made. The injury complained of is merely a consequence of the exercise of a legal right which

11

> the public acquired, and to which plaintiff's land became subject when the land was taken for a street. Whatever taking there has been was complete when the easement was first acquired.

32 Minn. At 322-23, 20 N.W. at 323. Finally, the supreme court in *Blaine Bldg. Corp.*, clearly stated that severance damages "must arise from the changes in the land actually taken, and not merely from the impact of the construction project as a whole." 566 N.W.2d at 334.

Here, the district court only excluded evidence of construction-related interference due to changes made to the existing right-of-way. In fact, the court specifically noted that it "will entertain the admissibility of any evidence of construction-related interferences caused specifically by changes made to the three parcels that were actually taken from [appellants] by [respondent]." But the district court correctly concluded that such evidence is not admissible as it pertains to land not actually taken. The district court's decision is well-reasoned and supported by applicable caselaw. Accordingly, appellants are unable to demonstrate that the district court erred by concluding that appellants are not entitled to present evidence of construction-related interferences pertaining to changes made to the existing right-of-way.

## III. Evidence of costs associated with berm construction

In calculating the amount of damages to be alleged as a result of the taking, appellants' appraiser conducted a separate analysis for damages he claimed were necessary to cure impacts of the construction, which consisted of compensating appellants for a berm to be constructed on their property. Respondent subsequently

12

sought to exclude this evidence of "cost-to-cure" damages. The district court granted the request, concluding that "[a]s discussed at great lengths [above], evidence of construction-related interferences caused by improvements made to the pre-existing right-of-way is inadmissible." The court also concluded that appellants were "not entitled to introduce evidence regarding the costs associated with constructing the berm in order to 'cure' those same construction-related interferences."

Appellants argue that the district court's decision is erroneous because "changes to the road resulting in increased noise and lack of privacy are compensable to the extent they cause diminution of the value of the remaining property." To support their claim, appellants cite *City of Chisago City v. Holt (In re Condemnation by City of Chisago City)*, in which this court affirmed a $5,000 damage award to the landowners compensating them for constructing a new gravel road to an existing building on their land which was required due to a .71 acre taking by the city. 360 N.W.2d 390, 392 (Minn. App. 1985), *overruled on other grounds by Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860 (Minn. 2010).

We conclude that *Holt* is distinguishable from this case because the gravel road constructed by the landowner in *Holt* was necessitated by the physical taking of his land. *See id.* In contrast, the berm is an attempt to mitigate alleged damage caused by respondent's improvement of land it already owns, which is non-compensable. *See Henderson*, 32 Minn. at 322-23, 20 N.W. at 323-24. Moreover, the measure of damages is the diminution in value of the land remaining after the taking. *Strom*, 493 N.W.2d at 558-59. It does not consist of the cost-to-cure noise and privacy damages by the

13

construction of a berm. And, as the district court points out, all of the landowners living along CSAH 83 have been affected by the project. Appellants, however, "should not be entitled to collect damages related to 'interferences' solely because [respondent] happened to coincidentally take 0.13 acres of their land for separate purposes relating to the project." Accordingly, appellants are unable to demonstrate that the district court erred by concluding that evidence of costs associated with berm construction to cure construction-related interferences must be suppressed.

**IV.    Evidence of claimed rental value of the temporary easement**

During the project, respondent claimed a temporary construction easement lasting at least 20 months that covered a strip of land running the entire length of the property, parallel to the existing right-of-way along CSAH 83. Appellants argue that for purposes of determining damages, the district court erred by excluding evidence related to appellants' claimed rental value of the land during the course of the temporary construction easement.

Generally, fair compensation for a temporary possession of a business enterprise is the reasonable value of the property's use. *See Kimball Laundry Co. v. United States*, 338 U.S. 1, 7, 69 S. Ct. 1434, 1438 (1949). And our supreme court has cautioned that "damages are to be measured by what is taken from the owner and not by the necessities of the condemnor or the peculiar advantages which accrue to the condemnor by the taking." *State by Spannaus v. Dangers*, 312 N.W.2d 668, 673 (Minn. 1981).

Here, appellants claimed that because respondent used their property for storing equipment and for other construction-related purposes, the jury should be allowed to

14

consider rates of comparable outdoor industrial rental and storage properties.  Indeed, respondent's motion in limine recognized that "there is a temporary construction easement that clearly entitles [appellants] to some consideration."  But as the district court found, the land contained within the temporary easement is regulated by zoning laws which would have prevented appellants from actually using the land as industrial storage.  The fact that the county was allowed to use the temporary easement to periodically store equipment is a peculiar advantage accrued by respondent which is not to be considered when determining the measure of damages.  *See Dangers*, 312 N.W.2d at 673.  To allow the jury to consider rates of comparable outdoor rental and storage properties would greatly inflate the value of the property's reasonable use because under the existing zoning laws, appellants could have never actually used the temporary easement land as an industrial rental property.  Therefore, we conclude that the district court did not err by excluding evidence of damages pertaining to the alleged rental value of the temporary easement during the course of the construction.

**Affirmed.**

15