**DALE PROPERTIES, LLC,**
**Petitioner, Appellant,**

**v.**

**STATE of Minnesota, Respondent.**

**No. C3–00–837.**

Court of Appeals of Minnesota.

Dec. 5, 2000.

John W. Lang, Elizabeth L. Plitzuweit, Messerli & Kramer, P.A., Minneapolis, for appellant.

Mike Hatch, Minnesota Attorney General, David M. Jann, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by G. BARRY ANDERSON, Presiding Judge,
RANDALL, Judge, and HARTEN, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant landowner Dale Properties, LLC lost westbound traffic access to the subject property after the state removed a median crossover point. Appellant argues that the district court erred by concluding that no taking occurred and granting summary judgment to respondent state. Appellant also contends the district court failed to consider whether appellant retained reasonably convenient and suitable access to the property from the highway's eastbound traffic lane. Appellant further claims the original property condemnation granted two-way access, and that the state abused its police powers by removing that access. We determine that the state acted within its police powers, and affirm the district court's decisions that the original condemnation proceedings did not grant appellant two-way access from the abutting highway. We conclude, however, that in determining whether there was a taking, the district court ought to have reached the question of whether the remaining eastbound lane of traffic constituted reasonable access, and reverse and remand for findings of fact and conclusions of law addressing that question.

## FACTS

The subject property (Dale Property) is a 29–acre parcel originally part of a 130–acre land tract affected by a 1965 condemnation proceeding. In 1965, the state condemned a portion of the property to build a diamond interchange at the intersection of Interstate 694 and what is now Trunk Highway 5 (T.R. 5) in Oakdale, Minnesota. As part of the condemnation, the state took all access to the Dale Property from

Interstate 694 and T.R. 5, except for a 30–foot portion of T.R. 5 access granted in a 1973 Final Certificate issued at the conclusion of the condemnation matter. The Dale Property is bounded on the west by Interstate 694, on the north by T .R. 5, on the south by a railroad right-of-way, and on the east by another property. The 30–foot T.R. 5 access is the only means of vehicle entry to or exit from the Dale Property.

Sometime between 1973 and September 1997, the state installed a median between T.R. 5's eastbound and westbound traffic lanes. A gap in the median, termed a "crossover point," allowed traffic from either direction to turn into the Dale Property driveway at the access point provided in the Final Certificate. In September 1997, citing safety reasons, the Minnesota Department of Transportation (MnDOT) closed the "crossover point" by installing a solid median. This construction prevents westbound traffic on T.R. 5 from executing a left turn into the Dale Property driveway. While eastbound traffic can directly access the Dale Property, westbound travelers wishing to access the Dale Property must pass the property by at least one half mile, execute a U-turn, and return eastbound on T.R. 5.

Appellant asked, by a February 9, 1998 letter, that MnDOT reopen the "crossover point." MnDOT declined. On March 24, 1999, appellants petitioned for a writ of mandamus from the district court to compel MnDOT to commence condemnation proceedings or, in the alternative, pay damages for the taking of property for public use. In December 1999 respondent moved for summary judgment, and the district court granted the motion on the basis that there was no "taking" for condemnation purposes. Appellant now challenges that ruling.

## ISSUE

Did the district court err by concluding, as a matter of law, that respondent was entitled to summary judgment on the basis that the state's removal of the median crossover point did not constitute a compensable taking?

## ANALYSIS

Appellant argues that the district court erred by failing to recognize a fact dispute and by concluding that there was no compensable taking as a matter of law. Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). We must consider the evidence in the light most favorable to the party against whom summary judgment was granted. *Fahrendorff ex rel. Fahrendorff v. North Homes, Inc.,* 597 N.W.2d 905, 909–10 (Minn.1999).

"It is well settled that the state must compensate a landowner when land is taken for a public purpose." *County of Anoka v. Blaine Bldg. Corp.,* 566 N.W.2d 331, 334 (Minn.1997). Both the Minnesota Constitution and state statutes provide that compensation must be paid when a taking occurs. Minn. Const. art. 1, § 13; Minn.Stat. § 117.025, subd. 2 (1998). Property owners who believe their property has been taken may petition the district court for a writ of mandamus to compel the state to initiate condemnation proceedings under Minn.Stat. ch. 117. *Grossman Invs. v. State by Humphrey,* 571 N.W.2d 47, 50 (Minn.App.1997), *review denied* (Minn. Jan. 28, 1998). A district court reviewing a petition for a writ of mandamus "must decide, as a threshold matter, whether a taking of property has occurred in the constitutional sense." *Id.*

■ Although interference with property access may be a compensable taking, property owners do not have a vested interest in continued traffic flow past their property. *Blaine Bldg. Corp.*, 566 N.W.2d at 334 (citing *Hendrickson v. State*, 267 Minn. 436, 442, 127 N.W.2d 165, 170 (1964)). Damages "must arise from changes in the land actually taken, and not merely from the impact of [a] construction project as a whole." *Id.* (citation omitted).

> [I]f the regulation or restriction falls within the state's 'police powers', no compensable loss has occurred. Included in this category are the establishment of one way streets and lanes of traffic; median strips prohibiting or limiting crossovers from one lane of traffic to another; restrictions on U-turns, left and right turns, and parking; and regulations governing the weight, size, and speed of vehicles.

*State by Mondale v. Gannons, Inc.*, 275 Minn. 14, 20, 145 N.W.2d 321, 326–27 (1966).

■ Property owners do enjoy, however, a right of "reasonably convenient and suitable access" to highways that abut their property. *Johnson v. City of Plymouth*, 263 N.W.2d 603, 605 (Minn.1978); *Gannons*, 275 Minn. at 19, 145 N.W.2d at 326. But even a denial of immediate or convenient access will not necessarily create a compensable taking. "[A] property owner suffers compensable damage when the roadway is changed in such a way that the owner is denied reasonably convenient and suitable access to the main thoroughfare *in at least one direction.*" *Blaine Bldg. Corp.*, 566 N.W.2d at 334 (citations omitted). " '[T]he law is well settled * * * that the dividing of a roadway by median strips or dividers cannot be made the subject of compensation in condemnation,' where, as a result, a property owner loses traffic access in one direction, but retains access in the other." *Id.* (quoting *Gannons*, 275 Minn. at 23, 145 N.W.2d at 329).

■ The district court, having concluded as a threshold matter that the removal of the crossover point did not constitute a compensable taking, decided there was no need to reach the question of whether the remaining eastbound lane access to the Dale Property was reasonable. Appellant, however, argues that the district court should not have determined a "taking" had not occurred without a jury's resolution of whether the remaining eastbound traffic lane access is "reasonably convenient and suitable." In the alternative, appellant argues that the remaining access to the Dale Property is unreasonable as a matter of law.

■ We agree with appellant's argument that the district court erred by determining that no taking had occurred without resolving the question of whether appellant's remaining access in one direction was "reasonably convenient and suitable." We are not bound by the district court's legal conclusions relating to reasonable access, and review this issue de novo. *Grossman*, 571 N.W.2d at 51.

*Blaine Bldg. Corp.* recognizes that reasonably convenient and suitable access in at least one direction is inherent in the nature of the property right:

> While property owners have no vested interest in the continued flow of traffic past the property, property owners do have a right of "reasonably convenient and suitable access" to a public street or highway that abuts their property. This right is in the nature of a property right.

*Id.*, 566 N.W.2d at 334 (citations omitted). In addition, we have rejected the notion that loss of access due to the installation of a dividing median can never be compensable. *See County of Anoka v. Esmailzadeh*, 498 N.W.2d 58, 61–62 (Minn.App.1993) (recognizing the right to access in at least one direction), *review denied* (Minn. May 28, 1993).

■ Thus, where a property owner retains access in at least one direction, but that remaining access is not "reasonably convenient and suitable," there has been a

taking. The holding in *Grossman* supports our conclusion. *See Grossman,* 571 N.W.2d at 51 (determining remaining access was reasonably convenient and suitable in at least one direction before concluding no taking occurred). We now hold that the district court improperly severed the question of "reasonably convenient and suitable access" from the question of whether a taking had occurred and reverse the summary judgment and remand to allow the district court to address this question.

We disagree, however, with appellant's contention that the question of reasonably convenient and suitable access is always a fact question that must be resolved by a jury.

> What constitutes reasonable access must, of course, depend to some extent on the nature of the property under consideration. The existence of reasonable access is thus a question of fact to be determined in light of the circumstances peculiar to each case.

*Johnson,* 263 N.W.2d at 607 (citation omitted) (Minn.1978). Where, however, as in *Johnson,* the facts are not in dispute, the district court, and not a jury, may decide as a matter of law whether a property owner has been denied reasonably convenient and suitable access in at least one direction. *Id.* at 605; *see also Hendrickson,* 267 Minn. at 437, 127 N.W.2d at 172 n. 19 (explaining that had the facts been certain, the court "would have little hesitation in sustaining a ruling that the remaining access was reasonably convenient and suitable as a matter of law"); *Grossman,* 571 N.W.2d at 50 ("Ultimately, though, the trial court must determine whether, as a matter of law, the change in access constitutes a compensable taking.")

We remand this matter to the district court for a determination, on the existing record, of whether the state's removal of the median crossover point deprived appellant of reasonably convenient and suitable access to the Dale Property from the remaining eastbound traffic lane of T.R. 5.

In doing so, the district court must make factual findings and if the facts are not disputed determine, as a matter of law, whether the effect of the crossover point removal on the remaining eastbound traffic lane access denied appellant reasonably convenient and suitable access in at least one direction. *See Esmailzadeh,* 498 N.W.2d at 62 (requiring, on remand, additional factual findings concerning the effects of construction on the property owner's business). By remanding, we decline to reach appellant's claim on appeal that the remaining access is unreasonable as a matter of law.

Appellant next contends that the state's act of closing the "crossover point" constitutes an unreasonable exercise of its police power. "[T]he operative question is not whether the [governmental entity] exercised its police powers in a reasonable fashion * * * but rather whether the * * * legitimate police power action unduly restricted vehicular access to the subject property and thereby deprived appellants of their right of reasonable access." *Johnson,* 263 N.W.2d at 607. Because *Gannons* makes clear that a removal of a median crossover point is within the state's police power, we leave the question of reasonable access to the district court on remand. 275 Minn. at 20, 145 N.W.2d at 327.

Appellant also argues that the 1973 Final Certificate issued at the conclusion of the earlier condemnation proceedings granted appellant a right to the median crossover point. The district court held the certificate granted no such right and we agree. Where document terms are unambiguous, courts may construe the provisions without considering extrinsic evidence. *In re Turners Crossroad Dev. Co.,* 277 N.W.2d 364, 369 (Minn.1979); *Collins Truck Lines, Inc. v. Metropolitan Waste Control Comm'n,* 274 N.W.2d 123, 127 (Minn.1979). The certificate grants only "right of access on the easterly 30 feet" of the property abutting T.R. 5. Ac-

cordingly, we affirm the district court's determination that the certificate did not grant appellant a right to traffic access from both lanes of T.R. 5.

## DECISION

A district court considering whether the closure of a median crossover point constitutes a taking must consider whether the landowner retains reasonably convenient and suitable access in at least one direction.

**Affirmed in part, reversed in part, and remanded.**