DALE PROPERTIES, LLC, Respondent,

v.

STATE of Minnesota, Petitioner, Appellant.

No. C3–00–837.

Supreme Court of Minnesota.

Feb. 7, 2002.

---

Mike Hatch, Attorney General, David Michael Jann, Assistant Attorney General, St. Paul, Attorneys for Appellants.

John W. Lang, Thomas P. Klecker, Messerli & Kramer, P.A., Minneapolis, Attorneys for Respondent.

## OPINION

PAGE, Justice.

This case presents the issue of whether a landowner whose immediate access to a state highway has been limited to one direction by the closure of a median crossover is entitled to compensation from the state for the resulting reduction in value of its property. The court of appeals reversed summary judgment for the state and remanded for a determination whether the remaining access was "reasonably convenient and suitable." We reverse, concluding that a property owner who retains direct access to traffic in one direction, although losing it in the other direction due to the closure of a median crossover, retains reasonable access as a matter of law.

Dale Properties, LLC (Dale), owns roughly 29 acres of undeveloped land, which it uses for farming, in Oakdale, Minnesota. The property, located in the southeast quadrant of the intersection of Interstate 694 and Trunk Highway 5, is bounded by I–694 on the west, Highway 5 on the north, a railroad right-of-way on the south, and another owner's undeveloped property on the east. Dale's access to the property is limited to a 30–foot point of access at the northeast corner of the property. In September 1997, the Minnesota Department of Transportation closed an opening in the median along Highway 5 directly across from Dale's access point. Due to the closing, the westbound lanes of Highway 5 are no longer available for direct ingress to or egress from the property.

After the median crossover was closed in 1997, Dale was left with direct access to only the eastbound lane of Highway 5. Consequently, those wishing to enter the property from the westbound lane have had to travel an additional five-eighths of a mile and make a U-turn onto the east-

bound lane to reach the property's access point. Those exiting the Dale property wishing to travel west have had to travel an additional mile as well as make a U-turn. According to Dale, commercial trucks are unable to make U-turns at the intersections closest to the property.

Due to the closure, Dale alleged difficulty in the development of the property, which is zoned industrial office in the northern portion, general industrial in the southern portion, and guided commercial generally. Dale claimed that, before the closing, the highest and best use of the property was threefold: a convenience store with gas pumps, a hotel with a restaurant, and office buildings and warehouse space. Dale claimed that, after the closing, the highest and best use was residential development. Dale asserted that the closure of the crossover caused the value of the property to drop by approximately $800,000.

Dale petitioned the district court for a writ of mandamus seeking to compel the state to initiate condemnation proceedings or, in the alternative, to pay damages allegedly caused by the closure of the median crossover. Dale contended that the property no longer had reasonably convenient and suitable access to the highway, that the closure substantially impaired its ability to develop the property, that the closure significantly decreased the property's fair market value, and that the closure constitutionally damaged the property, thereby amounting to a taking in violation of both the Minnesota and the United States Constitutions. In response, the state moved for summary judgment, asserting that Dale's property had access in one direction, as required by this court's decision in *County of Anoka v. Blaine Building Corp.*, 566 N.W.2d 331 (Minn. 1997), and that no taking occurred.

The district court granted the state's motion for summary judgment, finding that it was unnecessary to consider the reasonableness of Dale's remaining access to the highway because no "compensable taking" had occurred. On appeal, the court of appeals concluded that the district court erred by failing to consider whether Dale's remaining access was "reasonably convenient and suitable." *Dale Props., LLC v. State*, 619 N.W.2d 567, 571 (Minn. App.2000). As a result, the court of appeals reversed in part and remanded. *Id.* at 573.

I.

Article I, section 13, of the Minnesota Constitution provides that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Minnesota Statutes § 117.025, subd. 2 (2000), defines "[t]aking and all words and phrases of like import" to include "every interference, under the right of eminent domain, with the possession, enjoyment, or value of private property." Thus, a taking may occur both as a result of the physical appropriation of property or as the result of interference with the ownership, possession, enjoyment, or value of property. *Johnson v. City of Plymouth*, 263 N.W.2d 603, 605 (Minn.1978). In either case, our analysis is the same. *Blaine Bldg. Corp.*, 566 N.W.2d at 336. Property owners who believe the state has taken their property in the constitutional sense may petition the court for a writ of mandamus to compel the state to initiate condemnation proceedings. *Gibson v. Commissioner of Highways*, 287 Minn. 495, 498, 178 N.W.2d 727, 729–30 (1970); *see also* Minn.Stat. §§ 586.01–.12 (2000).

II.

The resolution of this case is governed by our decisions in *Hendrickson v.*

*State,* 267 Minn. 436, 127 N.W.2d 165 (1964), *State ex rel. Mondale v. Gannons Inc.,* 275 Minn. 14, 145 N.W.2d 321 (1966), and, most recently, *Blaine Building Corp.,* 566 N.W.2d at 331.

*Hendrickson* involved the state's construction of a freeway that denied the abutting property owner direct access to the highway. 267 Minn. at 436–39, 127 N.W.2d at 167–69. The property owner's only access to the highway was indirect and circuitous by way of a frontage road. *Id.* at 439, 127 N.W.2d at 169. We held that, notwithstanding the availability of a frontage road, an owner suffers compensable damage if the highway to which the owner previously had immediate and unlimited access is rebuilt on an existing right-of-way in a manner that denies the owner reasonably suitable and convenient access to the main thoroughfare in at least one direction. *Id.* at 445–46, 127 N.W.2d at 172–73. While holding that the state's exercise of its police power, on the facts presented, could result in a compensable loss, we set forth a number of examples of noncompensable exercises of a state's police power. *Id.* at 440–41, 127 N.W.2d at 169–70. One such example was the construction of "median strips prohibiting or limiting crossovers from one lane of traffic to another." *Id.* The other examples included the establishment of one-way streets and lanes of traffic; restrictions on U-turns, left and right turns, and parking; and regulations governing the weight, size, and speed of vehicles. *Id.* The court noted that these restrictions and regulations do not give rise to compensable damages because they "govern all motorists, including abutting property owners once they are on the traveled portion of the thoroughfare." *Id.*

In *Gannons Inc.,* we held that the trial court erred when it failed to "instruct on the police power of the state to control traffic by median strips or dividers without the payment of compensation." 275 Minn. at 21–22, 145 N.W.2d at 327–28. In doing so, the court noted that the "law is well settled in this state and other states that the dividing of a roadway by median strips or dividers cannot be made the subject of compensation in condemnation." *Id.* at 23, 145 N.W.2d at 329.

Recently, in *Blaine Building Corp.,* we considered whether the loss of traffic access in one direction, due to the construction of a median, may be included when determining the market value of the remaining land after a partial taking. 566 N.W.2d at 334. In answering that question, we again stated that " 'the dividing of a roadway by median strips or dividers cannot be made the subject of compensation in condemnation,' where, as a result, a property owner loses traffic access in one direction, but retains access in the other." *Id.*

The rationale for concluding that loss of traffic access in one direction is noncompensable when direct traffic access remains in the other direction can be found in our prior cases and the cases upon which we relied in *Hendrickson* and *Gannons Inc.* Collectively, the reasons may be stated as follows: First, the construction of highway medians constitutes an exercise of police power in furtherance of the state's duty to ensure public safety on the roadways. *Hendrickson,* 267 Minn. at 442, 127 N.W.2d at 170; *State Highway Comm'n v. Burk,* 200 Or. 211, 265 P.2d 783, 792 (1954); *Pennysavers Oil Co. v. State,* 334 S.W.2d 546, 548–49 (Tex.Civ. App.1960). Second, the restrictions on travel that result from the use of highway medians affect all members of the traveling public and are not unique to abutting property owners. *Hendrickson,* 267 Minn. at 441, 127 N.W.2d at 170; *Iowa State Highway Comm'n v. Smith,* 248 Iowa 869,

82 N.W.2d 755, 762 (Iowa 1957); *Holman v. State*, 97 Cal.App.2d 237, 217 P.2d 448, 452 (1950). Third, as long as property owners have access to the abutting highway in at least one direction, the use of highway medians that prohibit crossover from one traveled lane to another merely results in circuity of route, as opposed to substantial impairment of the right of access. *Gibson*, 287 Minn. at 500, 178 N.W.2d at 730; *People v. Sayig*, 101 Cal. App.2d 890, 226 P.2d 702, 711 (1951); *Mabe v. State*, 83 Idaho 222, 360 P.2d 799, 802 (1961).

Additionally, it is obvious that the dividing of a highway will have a marked effect on traffic patterns and access in any situation. *Gannons Inc.*, 275 Minn. at 22, 145 N.W.2d at 328. Although not a reason in and of itself for our conclusion today, we are wary of creating a legal environment in which the cost of regulating traffic and improving roadways becomes prohibitive. *Langley Shopping Ctr. v. State Roads Comm'n*, 213 Md. 230, 131 A.2d 690, 693 (1957) (noting that, if the state were required to compensate property owners for damages resulting from the construction of medians, the cost of doing so could be prohibitive); *Sayig*, 226 P.2d at 710 ("If a property owner is entitled to compensation because a divided highway is constructed in front of his property, then the same result would logically follow when one-way streets are created in cities to control traffic, or even where a double white line is placed in a highway which prohibits traffic from crossing that lane lawfully, and thus permits only one-way traffic in front of the property.").

In *Hendrickson, Gannons Inc..*, and *Blaine Building Corp.*, our statements focused on the construction of highway medians as opposed to the closure of highway median crossovers. We see no reason, however, to distinguish between the two situations when looking at the underlying rationale for holding that the construction of a highway median cannot be made the subject of compensation. Therefore, we conclude that the closure of the median crossover opposite Dale's access point was a noncompensable exercise of the state's police power because Dale lost traffic access in one direction, but retained access in the other direction.[1]

Reversed and summary judgment reinstated.

Concurring Specially, PAUL H. ANDERSON, J. and GILBERT, J.

PAUL H. ANDERSON, Justice (concurring specially).

I concur with the majority's conclusion that the district court did not err as a matter of law when it found that the state's closure of the median crossover did not constitute a compensable taking. But I write separately to clarify specific factual aspects of this case, to address the relevancy of *County of Anoka v. Blaine Building Corp.*, 566 N.W.2d 331 (Minn.1997), and to express concerns about the breadth of the court's holding.

First, it is important to clarify the factual setting of this case. In its arguments before both the district court and the court of appeals, Dale Properties asserted that the 1973 Final Certificate issued at the conclusion of the earlier condemnation proceedings granted Dale Properties a right to the median crossover point. Both lower courts concluded that the certificate granted no such right. The issue of the 1973 Final Certificate is not before us on ap-

---

1. We note that in arriving at our conclusion, we were hard-pressed to imagine a situation whereby not having access to the roadway in one direction would require one to traverse the expanse of a state just to make a U-turn.

peal; therefore, the ruling of the lower court on this issue is the law of the case. The lower court's ruling places Dale Properties in a situation similar to any other abutting landowner. Dale Properties cannot claim that as the result of an earlier condemnation proceeding, it retained specific rights to the median crossover. Therefore, Dale Properties asserts an inverse condemnation claim, not a takings claim.

Second, the majority uses *Blaine Building*, a partial takings case, to support the result reached here even though this case, as previously noted, is an inverse condemnation case. This confusion is in part understandable because the court in *Blaine Building* failed to distinguish between the two types of cases. But inverse condemnation cases are not dispositive in partial takings cases. As I stated in the dissent in *Blaine Building*, "inverse condemnation precedent confuses the threshold issue of *whether* a property owner is entitled to compensation with the true issue in [*Blaine Building*]: whether evidence of diminished access is admissible to establish the proper *measure* of damages when there has been a partial taking." 566 N.W.2d at 339.

The problems with the court's analysis in *Blaine Building* were recently summarized in a law review article. In that article, the commentator said:

> Thus, in *Blaine Building Corp.*, the majority spends much of the opinion arguing the reasons for denying compensation, when the issue of whether or not compensation will be awarded is not in dispute, *instead of discussing any reasons as to why the evidence of diminished access is not admissible.*

A better and more coherent approach for the majority would have been to exclusively rely on partial takings cases in making its decision. Inverse condemnation cases are instituted by a landowner to try to prove that property has been taken. In *Blaine Building Corp.*, property had been taken and there was no dispute as to the fact that compensation was required, as is the case in other partial takings cases. Thus, the line of cases presented by the majority are, as the dissent pointed out, "not helpful in that they address only the issue of whether a compensable taking has occurred and shed little light on the proper measure of damages when, as here, the right to compensation is indisputable." [1]

The irony of citing *Blaine Building* to support the result reached in the case before us today is that the inverse condemnation cases inappropriately relied upon in *Blaine Building* are appropriate to our analysis here. Nevertheless, it is important to keep in mind that partial takings cases and inverse condemnation cases have different pedigrees and we should not perpetuate any erroneous confusion of the two concepts.

Finally, the breadth of the court's opinion is troublesome because the majority, like the district court, resolves the issue before us by adopting the position that removal of a median crossover can never constitute a compensable taking. Therefore, the majority does not address the issue of reasonably convenient and suitable access. However, we have long recognized the principle that property owners do enjoy a right of "reasonably convenient and suitable" access to highways that abut

---

1. Alison J. Midden, Case Note, *Property— Taking of Access: Minnesota Supreme Court Declines to Allow Admission of Evidence of Diminished Access Due to Installation of a Median In a Takings Case*, 25 Wm. Mitchell L.Rev. 329, 349–50 (1999) (emphasis added) (citations omitted).

their property. *Johnson v. City of Plymouth*, 263 N.W.2d 603, 605 (Minn.1978); *State ex rel. Mondale v. Gannons Inc.*, 275 Minn. 14, 19, 145 N.W.2d 321, 326 (1966). We reiterated this principle in *Blaine Building* when we said "a property owner suffers compensable damage when the roadway is changed in such a way that the owner is denied reasonably convenient and suitable access to the main thoroughfare *in at least one direction.*" *Blaine Bldg. Corp.*, 566 N.W.2d at 334 (citing *Gannons*, 275 Minn. at 19, 145 N.W.2d at 326; *Hendrickson v. State*, 267 Minn. 436, 437, 127 N.W.2d 165, 168 (1964)). *See also Recke v. State*, 298 Minn. 500, 502, 215 N.W.2d 786, 788 (1974). The import of this statement is clear—when a roadway is changed, a property owner may not be denied "reasonably convenient and suitable access" in at least one direction.

It is likely that confusion has been created by the sentence in *Blaine Building* that follows the aforementioned statement. This second sentence reads as follows:

> "[T]he law is well settled * * * that the dividing of a roadway by median strips or dividers cannot be made the subject of compensation in condemnation," where, as a result, a property owner loses traffic access in one direction, but retains access in the other. *Gannons*, 275 Minn. at 23, 145 N.W.2d at 329.

*Blaine Bldg. Corp.*, 566 N.W.2d at 334. The majority construes this statement to mean that dividing a roadway by median strips or dividers, ergo removal of a median crossover, can never be the subject of compensation in condemnation. Such a reading ignores the juxtaposition of "reasonably convenient and suitable access" in the first sentence and "retains access" in at least one direction in the second sentence. When read together, the principle articulated in *Blaine Building* is that the retained access to the main thoroughfare in one direction must still be reasonably convenient and suitable. If it is not, there is a taking subject to compensation in a condemnation proceeding.

The holding articulated by the majority is so broad that access "in one direction" to Dale Properties' property could at one point be in Wisconsin and at the other in South Dakota. Such access would not be reasonably convenient and suitable and would be subject to compensation. Fortunately, that is not the situation that we have before us. Based on the facts, Dale Properties has not demonstrated that it has been denied reasonably convenient and suitable access in at least one direction. Therefore, it is not entitled to relief in an inverse condemnation proceeding. Here, when the state closed the median crossover, it properly exercised its police power in furtherance of its duty to ensure public safety on Highway 5. There was no compensable taking as a matter of law. But, unlike the majority, I am unwilling to state as an absolute rule that, as a matter of law, there never can be a compensable taking when a median crossover is closed. Therefore, I would reverse the court of appeals and reinstate summary judgment, but would do so on substantially more limited grounds than those articulated by the majority.

GILBERT, Justice (concurring specially).

I join in the special concurrence of Justice Paul H. Anderson.