*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0959**

Dirk Fisher, et al.,
Appellants,

vs.

State of Minnesota, Department of Transportation,
Respondent.

**Filed December 21, 2015
Affirmed
Klaphake, Judge**[*]

Beltrami County District Court
File No. 04-CV-14-3805

Sarah R. Jewell, Reichert Wenner, P.A., St. Cloud, Minnesota (for appellants)

Lori Swanson, Attorney General, Natasha M. Karn, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Reilly, Judge; and Klaphake, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KLAPHAKE**, Judge

Appellants ask us to reverse the district court's summary-judgment dismissal of their inverse-condemnation action relating to a highway project. We affirm.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**D E C I S I O N**

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 61 (Minn. 2014). "A fact is 'material' for purposes of summary judgment if its resolution will affect the outcome of the case." *Sayer v. Minn. Dep't of Transp.*, 790 N.W.2d 151, 162 (Minn. 2010) (Gildea, C.J., concurring). "A genuine issue of material fact must be established by substantial evidence," *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 704 (Minn. 2013) (quotations omitted), which "refers to legal sufficiency and not quantum of evidence," *Murphy v. Country House, Inc.*, 307 Minn. 344, 352, 240 N.W.2d 507, 512 (1976). "[T]o raise a genuine issue of material fact the nonmoving party must present more than evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009); *see also N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 491 (Minn. 2004) (stating that "summary judgment cannot be defeated with unverified and conclusory allegations or by postulating evidence that might be developed at trial" (quotation omitted)).

"[Appellate courts] review a district court's decision to grant summary judgment de novo to determine whether any genuine issue of material fact exists and whether the district court correctly applied the law." *Citizens State Bank*, 849 N.W.2d at 61. "When

2

considering a grant of summary judgment, [appellate courts] need not adopt the reasoning of the district court. Indeed, [appellate courts] may affirm a grant of summary judgment if it can be sustained on any grounds." *Doe v. Archdiocese of St. Paul & Minneapolis*, 817 N.W.2d 150, 163 (Minn. 2012) (citation omitted).

*Taking*

Appellants Dirk Fisher and Antoinette Fisher owned about an acre of unimproved real property at the northeast corner of the intersection between Highway 71 and Carr Lake Road in Beltrami County. The property did not have a driveway onto either road. In about 2009, respondent State of Minnesota Department of Transportation (MnDOT) began a project to improve Highway 71 by adding a right-turn lane from westbound Carr Lake Road onto northbound Highway 71. In December 2014, Fishers petitioned for a writ of mandamus against MnDOT, alleging that the highway project had resulted in a taking of their right of access to Highway 71 and asserting a claim for inverse condemnation. On MnDOT's motion, the district court granted summary judgment and dismissed the action, reasoning that "no genuine issue of material fact exists as to whether [MnDOT] took access rights from [Fishers]."

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured." Minn. Const. art. I, § 13. Property is "taken" by any "interference, under the power of eminent domain, with the possession, enjoyment, or value of private property." Minn. Stat. § 117.025, subd. 2 (2014); *see also Dale Props., LLC v. State*, 638 N.W.2d 763, 765 (Minn. 2002) (stating that "a taking may

3

occur both as a result of the physical appropriation of property or as the result of interference with the ownership, possession, enjoyment, or value of property").

"Property owners who believe the state has taken their property in the constitutional sense may petition the court for a writ of mandamus to compel the state to initiate condemnation proceedings." *Dale Props.*, 638 N.W.2d at 765.

> Mandamus is an extraordinary remedy that is available only to compel a duty clearly required by law. In order to obtain mandamus relief, a petitioner must show that the defendant: (1) failed to perform an official duty clearly imposed by law; (2) that, as a result, the petitioner suffered a public wrong specifically injurious to the petitioner; and (3) that there is no other adequate legal remedy.

*N. States Power Co.*, 684 N.W.2d at 491 (citations omitted).

In a mandamus action, "[e]ither party shall be entitled to have any issue of fact tried by a jury, as in a civil action." Minn. Stat. § 586.12 (2014). But an inverse-condemnation petitioner is not entitled to a jury trial if the undisputed facts show that no compensable taking occurred. *See Thomsen v. State by Head*, 284 Minn. 468, 475, 170 N.W.2d 575, 580-81 (1969) (stating that mandamus court must use jury only if disputed facts exist). If the undisputed facts show that no compensable taking occurred, summary-judgment dismissal of the petition is warranted. *See Dale Props.*, 638 N.W.2d at 765, 767 (reversing and reinstating summary judgment against petitioner where "the closure of the median crossover opposite [petitioner]'s access point was a noncompensable exercise of the state's police power" rather than compensable taking).

"Interference with access to an abutting roadway may be a compensable taking," because "property owners . . . have a right of reasonably convenient and suitable access to

4

a public street or highway that abuts their property," which "right is in the nature of a property right." *County of Anoka v. Blaine Bldg. Corp.*, 566 N.W.2d 331, 334 (Minn. 1997). The supreme court has held that "when the modification of [a] highway substantially impairs an abutting owner's right to reasonably convenient and suitable access to the main thoroughfare, owners of abutting land are entitled to damages." *Beer v. Minn. Power & Light Co.*, 400 N.W.2d 732, 734 (Minn. 1987) (quotation omitted). "What constitutes reasonable access must . . . depend to some extent on the nature of the property under consideration. The existence of reasonable access is thus a question of fact to be determined in light of the circumstances peculiar to each case." *Johnson v. City of Plymouth*, 263 N.W.2d 603, 607 (Minn. 1978).

In this case, Fishers claim that MnDOT's addition of a right-turn lane on Carr Lake Road resulted in a compensable taking because the lane addition "automatically foreclose[d Fishers]' right of access from their property to Highway 71" by preventing Fishers from constructing a driveway onto Carr Lake Road near its intersection with Highway 71. In support of their claim, Fishers point to a letter that they received from a Beltrami County Engineer in June 2009:

> This letter is in response to your inquiry regarding placement of a proposed entrance off [Carr Lake Road], on your parcel . . . located in Bemidji Township. Based on our discussion with MnDOT and the proposed right turn lane on [Carr Lake Road], the entrance to your property would be limited to the East 46' of your parcel, as we would not permit an entrance to be located within the turn lane area.

The summary-judgment record also includes the affidavit of a Bemidji-area real estate agent, who averred as follows:

5

> Before the [highway] project, . . . Fisher[s] could have used the corner of H[ighway] 71 and Carr Lake Road as an access point [to Highway 71] for a potential buyer. However, after the project was completed, no access point could ever be added along the corner of H[ighway] 71 and Carr Lake Road because MNDOT added a right turn lane going all the way to the corner where this access point once was a possibility.

Fishers argue that this evidence raises a genuine issue of material fact as to "whether [their] right to reasonable and suitable access to Highway 71 was taken or not."

The question of whether any permissible driveway position provides "reasonably convenient and suitable access," *Blaine Bldg.*, 566 N.W.2d at 334, from Fishers' property to Highway 71 is a question of fact. *See Johnson*, 263 N.W.2d at 607. But as conceded by Fishers, "the district court never addressed whether [their present] right to access along Highway 71 is reasonable, convenient or suitable based on the unique facts and circumstances present in the case." Rather, the court implicitly concluded that Fishers failed to "present more than evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the[ir] case"—namely, that the highway project took away some portion of the access that Fishers enjoyed before the project. *See Valspar Refinish*, 764 N.W.2d at 364.

We agree. The June 2009 letter from the engineer may show that Beltrami County will not permit Fishers to construct a driveway onto Carr Lake Road near its intersection with Highway 71. But the letter does not show that Fishers would have been permitted to construct a driveway onto Carr Lake Road near its intersection with Highway 71 *but for* the highway project. And the real estate agent's averment that "[b]efore the project, . . . Fisher[s] could have used the corner of H[ighway] 71 and Carr Lake Road as an access

6

point [to Highway 71]" is no more than an unverified and conclusory allegation without a basis in the summary-judgment evidence. *See N. States Power*, 684 N.W.2d at 491. Because Fishers did not provide sufficiently probative evidence regarding their pre-project access to Highway 71, Fishers failed to establish by substantial evidence that a genuine issue of material fact exists as to whether the project interfered with that access. *See Eng'g & Const. Innovations*, 825 N.W.2d at 704. We affirm summary judgment on that basis.

### *Settlement*

"A valid settlement agreement is final, conclusive, and binding upon the parties." *State v. Arends*, 786 N.W.2d 885, 889 (Minn. App. 2010), *review denied* (Minn. Oct. 27, 2010). "A settlement agreement is a contract, and [appellate courts] review the language of the contract to determine the intent of the parties. When the language is clear and unambiguous, [appellate courts] enforce the agreement of the parties as expressed in the language of the contract." *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581-82 (Minn. 2010) (citations omitted).

In this case, the undisputed evidence shows that Fishers settled their claims for compensation in connection with the highway project under the following circumstances. In November 2009, MnDOT filed a petition for condemnation against certain properties in Beltrami County, including Fishers' property, seeking a .09-acre temporary easement on Fishers' property to park equipment for the highway project. In March 2010, MnDOT paid Fishers $300 in compensation for that temporary easement, and Fishers' lawyer wrote the following letter:

I am enclosing a Land Sales Location Map showing the location of the Fisher property and a copy of an appraisal . . . . [The appraiser] notes that the subject property is situated on the corner of US Highway 71 and [Carr Lake Road] [.] . . . [M]aximum value assumes a proper access off US Highway 71. . . . As [the appraiser] notes, location is the first consideration of value in commercial sites, and is heavily dependent upon traffic count, visibility and easy access to the site.

I am enclosing a copy of [the] appraisal. Mr. and Mrs. Fisher hereby make a settlement request consistent with this appraisal.

In May 2013, the parties executed a "STIPULATION FOR AWARD" that provided:

[MnDOT] and [Fishers] agree to accept a Commissioners' Award in the amount of $2,000.00. This agreement fully and finally settles all claims that were made or could have been made for the real estate in this action including minimum compensation but excludes [certain attorney-fee] claims . . . .

A quick take payment of $300.00 has been paid by [MnDOT], leaving a balance of $1,700.00, plus interest at the statutory rate.

Both [MnDOT] and [Fishers] agree not to appeal from said award.

Following the execution of this settlement agreement, MnDOT paid to Fishers the agreed-upon amount. More than a year later, Fishers commenced their inverse-condemnation action.

Fishers nevertheless argue that because "[they] were not notified that [MnDOT] intended to take [the] right to highway access abutting their land[,] . . . they could not have waived their right to be compensated for the loss of that property right." In essence, Fishers argue that to obtain a valid settlement of their right-of-access claim, MnDOT would have

had to condemn Fishers' right of reasonably convenient and suitable access according to the statutory procedures regarding notice and payment of compensation. The circularity of this argument is evident; condemnation under the statutory procedures is required upon the "exercise [of] the power of eminent domain," Minn. Stat. § 117.012, subd. 1 (2014), but nothing in chapter 117 suggests that its requirements are triggered by a property owner's mere *claim* that a state action is an exercise of eminent-domain power, *see* Minn. Stat. §§ 117.01-.57 (2014).

Fishers do not dispute that they raised their highway-access concerns to MnDOT, requested a settlement, signed a settlement agreement which stated that "[t]his agreement fully and finally settles all claims that were made or could have been made for the real estate in this action," and accepted payment of the agreed-upon amount. Neither do they challenge the validity of the settlement agreement. The settlement agreement unambiguously expresses the parties' intent to, again, "fully and finally settle[] all claims that were made or could have been made for the real estate in this action." Thus, we affirm summary judgment on the alternative basis that no genuine issue of material fact exists as to whether the settlement agreement bars Fishers' inverse-condemnation claim as one that was made or could have been made in MnDOT's condemnation action.

**Affirmed.**

9