*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1553**

Kjellberg's, Inc., et al., petitioners,
Appellants,

vs.

State of Minnesota, by its
Commissioner of Transportation,
Respondent.

**Filed May 2, 2016
Affirmed
Jesson, Judge**

Wright County District Court
File No. 86-CV-15-138

Brian C. Southwell, Minneapolis, Minnesota (for appellants)

Stephen D. Melchionne, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Jesson, Presiding Judge; Peterson, Judge; and Kirk, Judge.

# U N P U B L I S H E D   O P I N I O N

**JESSON**, Judge

Appellants challenge the district court's order dismissing their petition for a writ of mandamus seeking to compel the state to initiate condemnation proceedings. Appellants argue that placement of a median on a highway abutting their property denied them reasonably convenient and suitable access to the highway. Because appellants retained the

ability to access the highway in at least one direction and thereby had reasonably convenient and suitable access, we affirm.

## FACTS

Appellant companies Kjellberg's, Inc., Kjellberg's Management Corporation, and KK Construction, Inc.[1] own property that abuts Highway 25 in Monticello. Highway 25 runs north/south, and Kjellberg owns properties on both sides of the highway. One of these properties is a mobile home park (The Park) that is bisected by the highway. There are 199 rental pads for mobile homes on the west side of the highway (West Park) and 121 rental pads on the east side of the highway (East Park). Kjellberg also operates a business selling mobile homes in the area and owns an unimproved parcel of land known as Berry Farm directly to the south of West Park.

Until recently, Kjellberg, its employees, and the residents of The Park had direct access to both northbound and southbound lanes of Highway-25 traffic via a crossover intersection. The crossover intersection also facilitated vehicle and pedestrian traffic between East and West Park. Berry Farm enjoyed access to both lanes of traffic via the intersection of Highway 25 and a field access road.

As part of a highway improvement project, respondent State of Minnesota Department of Transportation (MnDOT) installed a median between the northbound and southbound lanes of traffic on Highway 25. The median closes both the crossover intersection and the intersection of Highway 25 and the field access road. As a result, East

---

[1] Appellants are owned/operated by Kent M. Kjellberg. For convenience, this opinion refers to appellants collectively as Kjellberg.

2

Park, West Park, and Berry Farm are limited to direct access to only one direction of Highway-25 traffic. The median also prevents crossing the highway directly between East and West Park. Persons wishing to travel north from West Park must proceed south for over half a mile and make a U-turn. Persons wishing to travel south from East Park must proceed north for over one-quarter mile and make a U-turn.

Kjellberg filed this action alleging that by installing the median, MnDOT effected an unconstitutional taking by limiting Kjellberg's right of access to Highway 25 without payment of just compensation. Kjellberg sought a writ of mandamus requiring MnDOT to institute condemnation proceedings. MnDOT subsequently filed a demurrer, asking the district court to dismiss the petition. The district court sustained the demurrer and dismissed the action. The district court found that, because Kjellberg and the residents of The Park maintain reasonably convenient and suitable access to Highway 25 in at least one direction, as a matter of law, no taking had occurred. This appeal follows.

## D E C I S I O N

Taking property for public use, without the landowner's consent, is an inherent power of government, referred to as the power of eminent domain. *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 875-76 (Minn. 2010). Based upon the facts presented in the complaint and clear precedent regarding the use of highway medians, MnDOT's decision to construct a median on Highway 25 abutting Kjellberg's property was not an unconstitutional taking.

The Minnesota Supreme Court has described eminent domain as "the inherent power of a sovereign to take an individual's property without the individual's consent."

3

*Id.* at 875. The power of eminent domain is limited by the Bill of Rights in the Minnesota Constitution, which protects property owners from having their property taken for public purposes without payment of "just compensation." Minn. Const. art. I, § 13. The power of eminent domain is often used to exercise the state's authority granted under a separate part of the constitution: to "construct, improve, and maintain public highways." Minn. Const. art. XIV, § 1.

In order to exercise the power of eminent domain in Minnesota, the government must follow the procedures for condemnation of property described in Minn. Stat. ch. 117. *Port Auth. of St. Paul v. RLR, Inc.*, 758 N.W.2d 604, 605 (Minn. App. 2008). These procedures include obtaining an appraisal, making offers, and, if negotiations are not successful, having the attorney general commence a condemnation proceeding. Minn. Stat. §§ 117.035, .036, .055 (2014).

Where the landowner believes property has been taken by the government and the government disagrees, the landowner may bring what is termed an "inverse condemnation" lawsuit.[2] *DeCook v. Rochester Int'l Airport Joint Zoning Bd.*, 811 N.W.2d 610-612 (Minn. 2012). This proceeding is an attempt to force the government, if the landowner establishes a taking and right to compensation, to start a condemnation action in order to determine

---

[2] A landowner brings an inverse condemnation proceeding by petitioning for a writ of mandamus. *Dale Props., LLC v. State*, 638 N.W.2d 763, 765 (Minn. 2002). Mandamus is an extraordinary remedy that allows a petitioner to compel the state to undertake a duty that is clearly required by law. *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 491 (Minn. 2004). The petitioner in a mandamus action must establish that the defendant: "(1) failed to perform an official duty clearly imposed by law; (2) that, as a result, the petitioner suffered a public wrong specifically injurious to the petitioner; and (3) that there is no other adequate legal remedy." *Id.* (citations omitted).

4

damages.[3] *Dale Props.*, 638 N.W.2d at 765; *Thomsen v. State by Head*, 284 Minn. 468, 475, 170 N.W.2d 575, 580-81 (1969). Not every member of the public can bring an inverse condemnation case. Persons who are not abutting landowners have no right to damages "merely because access to a conveniently located highway may be denied, causing them to use a more circuitous route." *Hendrickson v. State*, 267 Minn. 436, 442, 127 N.W.2d 165, 170-71 (1964). An abutting landowner, however, may be entitled to damages when a highway modification substantially impairs "reasonably convenient and suitable access to the main thoroughfare," *Beer v. Minn. Power & Light Co.*, 400 N.W.2d 732, 734 (Minn. 1987) (quotation omitted), or when the damage is "different in kind and not merely in degree from that experienced by the general public." *Hendrickson*, 267 Minn. at 442, 127 N.W.2d at 170.

In its petition for a writ of mandamus, Kjellberg asserts an unconstitutional taking of its property due to the construction of a median on the highway that bisects Kjellberg's mobile home park. Kjellberg argues that the median caused it a "special injury," unlike any injury to the general public, because Kjellberg is required to provide services to residents of the mobile home park. For example, Kjellberg is required by law to maintain an emergency shelter for residents of the mobile home park. The current emergency shelter is in West Park, and Kjellberg argues that the median prevents residents of East Park from

---

[3] In limited situations, as per *DeCook*, government regulation of private property may result in a taking even when there is no direct appropriation or physical invasion of the property. *DeCook v. Rochester Int'l Airport Joint Zoning Bd.*, 796 N.W.2d 299, 305 (Minn. 2011). The Minnesota Supreme Court has held that a taking "can arise out of any interference by the state with the ownership, possession, enjoyment, or value of private property." *Johnson v. City of Plymouth*, 263 N.W.2d 603, 605 (Minn. 1978).

accessing the shelter. Kjellberg also argues that trucks carrying mobile homes from West Park to East Park will not be able to make the U-turn required to access one park from the other. As a result of this situation, Kjellberg asserts that its right as an abutting landowner "to reasonably convenient and suitable access to the main thoroughfare" has been abridged. *See Beer*, 400 N.W.2d at 734 (quotation omitted).

MnDOT filed a demurrer to the mandamus petition, asking the district court to dismiss the matter.[4] In a detailed order, the district court granted the demurrer, noting that it is "well settled" that a landowner is not entitled to compensation for closure of a median crossover or installation of a highway median where the landowner retains reasonably convenient and suitable access to the highway in at least one direction. When it is based solely on a legal determination, we review a district court's decision on a mandamus petition de novo. *Nolan & Nolan v. City of Eagan*, 673 N.W.2d 487, 493 (Minn. App. 2003), *review denied* (Minn. Mar. 16, 2004).

Our de novo review begins and ends with a close examination of *Dale Properties, LLC v. State of Minnesota.* In *Dale Properties*, the owner of 29 acres of undeveloped property originally had access to both the westbound and eastbound lanes of Highway-5

---

[4] "The demurrer" has generally been "replaced by the motion to dismiss for failure to state a claim under Minn. R. Civ. P. 12.02([e])." *Pederson v. Am. Lutheran Church*, 404 N.W.2d 887, 889 (Minn. App. 1987), *review denied* (Minn. June 30, 1987). However, the demurrer is specifically mentioned in the mandamus statute. Minn. Stat. § 586.08 (2014). Mandamus is a "special proceeding," *Schlitz v. City of Duluth*, 449 N.W.2d 439, 440-41 (Minn. 1990), and the rules of civil procedure apply only to the extent not in conflict with the statute. *Nationwide Corp. v. Nw. Nat'l Life Ins. Co.*, 255 Minn. 259, 266, 87 N.W.2d 671, 680 (1958). As the parties do not argue the issue, we take no position on the appropriate procedure for seeking dismissal of a mandamus petition.

traffic. 638 N.W.2d at 764. By closing a median crossover, MnDOT limited the landowner to direct access only to the eastbound lane. *Id.* After the crossover was closed, the inability to access both lanes of traffic required those wishing to enter the property from the westbound lane to travel an additional five-eighths of a mile and make a U-turn onto the eastbound lane. *Id.* at 764-65. Those exiting the property and wishing to travel west had to travel an additional mile and also make a U-turn. *Id.* at 765. More critically, the property owner claimed that commercial trucks were unable to make the U-turn and would have to travel even further to access the property. *Id.* The closure made commercial development unrealistic, and the value of the property dropped by approximately $800,000. *Id.*

The supreme court, relying on the trilogy of *Hendrickson*, 267 Minn. at 436, 127 N.W.2d at 165, *State by Mondale v. Gannons Inc.*, 275 Minn. 14, 145 N.W.2d 321 (1966), and *County of Anoka v. Blaine Building Corp.*, 566 N.W.2d 331 (Minn. 1997), rejected Dale Properties' arguments. *Dale Props.*, 638 N.W.2d at 767. The court stated that the construction of highway medians is an appropriate use of the state's police power that furthers public safety; that all members of the public are affected by the restrictions; and that, where access in one direction is maintained, the result is "circuity of route, as opposed to substantial impairment of the right of access." *Id.* at 766-67. The court further noted that "we are wary of creating a legal environment in which the cost of regulating traffic and improving roadways becomes prohibitive." *Id.* at 767. With this in mind, the court directly held that "a property owner who retains direct access to traffic in one direction, although losing it in the other direction due to the closure of a median crossover, retains reasonable access as a matter of law." *Id.* at 764.

Kjellberg claims that *Dale Properties* does not create a bright line rule and that, even though it retained direct access to traffic in one direction, it is entitled to compensation if it suffered "a special injury, one different in kind from that suffered by the general public" as a result of the median placed on Highway 25. We disagree on both counts. First, as Justice Anderson's concurrence in *Dale Properties* notes, the majority opinion established "an absolute rule." *Id.* at 769 (Anderson, J., concurring). This rule bars us from considering, on a case-by-case basis, what constitutes "reasonably convenient and suitable access" when the use of highway medians are involved. The only inquiry is whether the abutting landowner retains access to the roadway in at least one direction.

Second, the "special injury" alleged here, even if we were to address it, is not different in kind from that described by the landowner in *Dale Properties*. In *Dale Properties*, the closure of the median crossover required some to travel a longer route when accessing the landowner's property and when exiting the landowner's property. *Id.* at 764-65. Similarly, Kjellberg and the residents of The Park must travel a longer route to access the opposite lane of traffic or travel between East and West Park. Both Dale Properties and Kjellberg claimed that this extended travel time caused them damages. *Id.* at 765. The injuries alleged by both Dale Properties and Kjellberg are the result of circuity of route. The supreme court in *Dale Properties* concluded, as we conclude here, that "circuity of route" does not amount to a "substantial impairment of the right of access," and therefore does not give rise to a compensable taking. *See id.* at 767.

Kjellberg urges this court to ignore the precedent set in *Dale Properties* because it claims that "it is overly broad and disposes of the fact-intensive inquiry of whether a

8

property's owner retained access" that is "reasonably suitable and convenient."  But this court must follow Minnesota Supreme Court precedent.  *State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010).

Because Kjellberg retains access to Highway 25 in at least one direction from all of its properties, the placement of the median does not deny it reasonably convenient and suitable access.  The district court did not err by dismissing Kjellberg's inverse condemnation action.

**Affirmed.**